IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY LEWIS, KURT SZYMANSKI, ROBERT KLUGH, SR., <br><br> Plaintiffs, <br><br> v. <br><br> ALLEGHENY LUDLUM CORPORATION, ALLEGHENY TECHNOLOGIES INCORPORATED, <br><br> Defendants. | CIVIL ACTION NO. 11-1619 |

## **MEMORANDUM OPINION AND ORDER**

CONTI, District Judge.

Pending before the court is a motion to dismiss the complaint filed in the above-captioned case. (ECF No. 77.) For the reasons set forth in this memorandum opinion and order, the court will grant the motion to dismiss without prejudice.

**I. Background**

Plaintiffs Larry Lewis, Kurt Szymanski and Robert Klugh, Sr. ("plaintiffs") filed a three-count, class action complaint on behalf of themselves and similarly situated individuals against defendants Allegheny Ludlum Corporation and Allegheny Technologies Incorporated (collectively, "Allegheny Ludlum" or "defendants").[1] Plaintiffs are retired former union employees of Allegheny Ludlum. (Compl. (ECF No. 1) ¶ 1.) During their employment, plaintiffs were members of the United Steelworkers labor union ("USW"). (Id. ¶¶ 1, 2, 10.) Over the years, Allegheny Ludlum and the USW entered into a series of collective bargaining

---

[1] It appears based on the allegations in the complaint that Allegheny Ludlum Corporation and Allegheny Technologies Incorporated are affiliated entities. Plaintiffs allege facts against the two defendants collectively, to which defendants did not object. The court will consider the complaint without distinguishing between the two defendants.

agreements ("CBAs"), in which they agreed that Allegheny Ludlum would provide retired union members with health benefits. (Id. ¶¶ 23, 27.)

Under the terms of the most recent collective bargaining agreement ("CBA"), Allegheny Ludlum and USW agreed to increase the premium payments plaintiffs and other retired, former USW employees would be required to make under their health plans.[2] Plaintiffs allege that the previous CBAs vested lifetime health benefits in retired union employees of Allegheny Ludlum.

Plaintiffs claim that (a) the decision to increase retired union members' premium payments was in violation of one or more of the former CBAs—a breach of contract claim brought under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, (count one) and Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (count two)—and (b) Allegheny Ludlum breached its ERISA fiduciary duties to plaintiffs, see 29 U.S.C. §§ 1104, 1132(a)(3), when it misled them into believing their retiree medical benefits could not and would not be changed for the remainder of their lives following retirement (count three).

**II. Motion to Dismiss Standard**

A 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must provide

---

[2] As the parties made clear in their briefings, the relevant contract language in this case comes from "Program of Hospital-Medical Benefits" ("PHMBs") which were separate agreements between Allegheny Ludlum and the USW. Each PHMB was incorporated by reference into its corresponding CBA. Because the parties treat the language as being part of the CBA, the court will follow suit. For ease of reference, the court will not distinguish between the PHMBs and the CBAs, and will refer to the language in the PHMBs as having been part of the CBA.

2

more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

Two working principles underlie Twombly. Id. at 678-79. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555.) Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. Id. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (quoting FED. R. CIV. P. 8(a)(2)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions. Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court

3

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

Generally, if "matters outside the pleadings are presented to and not excluded by the court" a motion to dismiss must be treated as a motion for summary judgment. FED. R. CIV. P. 12(d). There are exceptions to this general rule. First, a court is permitted to consider documents "integral to or explicitly relied upon in the complaint" in ruling on a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them." Id. Second, the court may rely on "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Third, the court may rely on public records (if undisputed) such as criminal case dispositions, letter decisions of government agencies and published reports of administrative bodies. Id. at 1197. The rationale behind these exceptions is that the plaintiff is already on notice of the documents in these situations, and as such is not prejudiced by their consideration on a motion to dismiss. See U.S. Land Res. v. JDI Realty, LLC, Civil Action No. 08-5162, 2009 WL 2488316, at *4 (D.N.J. Aug. 12, 2009).

## III. Discussion

Allegheny Ludlum moves to dismiss the complaint for failure to state a claim. Defendants argue with respect to counts one and two that the retirement medical benefits were not vested as a matter of law and, therefore, could be terminated at the discretion of Allegheny Ludlum and the USW. With respect to count three, defendants argue that plaintiffs' claims are barred by the applicable statute of limitations. In the alternative, defendants argue that count three should be dismissed for failure to state a sufficiently plausible claim for relief under the federal pleading standards enunciated in Twombley and Iqbal.

Although plaintiffs failed to attach the relevant CBAs to the complaint, defendants attached them as exhibits to the motion to dismiss. The court will consider those documents, which are integral to the claims alleged in the complaint, without converting defendants' motion to a motion for summary judgment. See In re Burlington Coat Factory Sec. Litig., 114 F.3d at 142.

### A. Counts One and Two

With respect to the breach of contract claims under the LMRA and ERISA, the parties dispute the significance of continuation of coverage provisions in the CBAs which provided:

> Any pensioner or individual receiving a Surviving Spouse's benefit who shall become covered by the Plan established by this Agreement shall not have such coverage terminated or reduced (except as provided in the Plan) so long as the individual remains retired from the Company or receives a Surviving Spouse's benefit, <u>notwithstanding the expiration of this Agreement, except as the Company and the Union may agree otherwise.</u>

(E.g., Exhibit 11, Program of Hospital-Medical Benefits, Jan. 1, 1981 (ECF No. 90) at 53-54 (emphasis added).) Construction of collective bargaining agreements is typically a question of law, and because ERISA preempted state contract law principles, the court applies federal common law. Baldwin v. Univ. Pittsburgh Med. Ctr., 636 F.3d 69, 75 (3d Cir. 2011). When the terms of a collective bargaining agreement are clear and unambiguous, a court must determine their meaning as a matter of law, without looking to extrinsic evidence. See, e.g., In re Lucent Death Benefits ERISA Litig., 541 F.3d 250, 254-55 (3d Cir. 2008).

There are two types of employee benefit plans under ERISA: pension plans and welfare plans. Employee welfare plans provide "medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment. . . ." 29 U.S.C. § 1002(1). Pension plans, on the other hand, either (a) provide retirement income to employees, or (b) result in a deferral of income by employees for periods extending to the termination of

covered employment or beyond. 29 U.S.C. § 1002(2)(A). The plan involved in this litigation is an employee welfare plan, which provides medical benefits to retirees.

Congress excluded welfare plans from the vesting requirements it imposed on pension plans. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Skinner Engine Co., 188 F.3d 130, 138 (3d Cir. 1999). The distinction in vesting requirements was intentional. Id. ("Vesting requirements were not established for employee welfare plans because Congress determined that '[t]o require the vesting of those ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income.'" (quoting Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1160 (3d Cir. 1990))).

Because of this distinction, employers are "generally free for any reason at any time, to adopt, modify or terminate welfare plans." Id. (citing Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995)). The Court of Appeals for the Third Circuit explained in Skinner:

> [Employers] may agree of course to relinquish their right to unilaterally terminate those benefits and provide for lifetime vesting. This court has made clear that the "plan participant bears the burden of proving, by a preponderance of the evidence, that the employer intended the welfare benefits to be vested."
> In applying these standards, it must be remembered that to vest benefits is to render them forever unalterable. Because vesting of welfare plan benefits constitutes an extra-ERISA commitment, an employer's commitment to vest such benefits is not to be inferred lightly and must be stated in clear and express language.

188 F.3d at 138-39 (internal citations omitted).

Defendants argue that the continuation of coverage provision in the CBA quoted above, which provides medical benefits to retirees "except as the Company and the Union may agree otherwise," shows as a matter of law that vested ERISA benefits were not provided under the Skinner standard. Plaintiffs argue that the provision, together with the preceding language "notwithstanding the expiration of this Agreement," meets the Skinner standard. Plaintiffs argue

6

in the alternative that the language is at best ambiguous with respect to the vesting of benefits, and that they are, therefore, entitled to present extrinsic evidence to resolve the ambiguity. Plaintiffs cite Baldwin v. University of Pittsburgh Medical Center, 636 F.3d 69, 76 (3d Cir. 2011), where the Court of Appeals for the Third Circuit held that in determining whether contract terms are clear or ambiguous, "a court must consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." Id. The court in Baldwin, however, made clear that "where the words of the contract clearly manifest the parties' intent, a court need not 'resort to extrinsic aids or evidence.'" Id.

In Skinner, the Court of Appeals cautioned that

> [t]o determine whether a contract is ambiguous, a court may not merely consider whether the language is clear *from its point of view*. Rather, a court must "hear the proffer of the parties and determine if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." Reference must be made to the "contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation.

188 F.3d at 142. Plaintiffs have proffered that the clause "except as the Company and the Union may agree otherwise" only applies to individuals who have not yet retired. In other words, the continuation of coverage provision allows Allegheny Ludlum and the USW to divest the welfare benefits from people who have not yet retired, but does not apply to individuals who have already retired. Plaintiffs do not provide a reasonable textual argument for their interpretation of the contractual terms.[3] Plaintiffs did not alert the court to any indicia "from the linguistic reference point of the parties" that their proffered interpretation is correct. To reach the

---

[3] As was argued by counsel for Allegheny Ludlum during oral argument on this motion to dismiss, the continuation of coverage provision, upon fair reading and without consideration of extrinsic evidence, applies explicitly *only to* retirees. The language is backward-looking, and presumes that the individuals to which it is referring are already retired. For example, the provision applies to "pensioners," rather than employees. It provides coverage will continue "so long as the individual *remains* retired." Plaintiffs have not confronted the text of the continuation of coverage provision in arguing that an ambiguity exists.

7

conclusion sought by plaintiffs, this court would have to ignore the phrase "except as the company and the union may agree otherwise." The court cannot do so. See Kitterman v. Coventry Health Care of Iowa, Inc., 632 F.3d 445, 459 (8th Cir. 2011) ("[W]hen interpreting the terms of the [ERISA] plan, we cannot ignore provisions or rewrite the plan documents to conform with what the [beneficiary] actually read. . . . We must consider the documents as an 'integrated whole,' and 'give effect" to 'all parts of the contract.'"). The court cannot conjure ambiguity where none exists. For this reason, plaintiffs did not sufficiently plead a breach of contract claim under the LMRA or ERISA. They have not shown a plausibility of entitlement to relief, and the complaint must be dismissed with respect to counts one and two.

The court will, however, permit plaintiffs to file an amended complaint. Although the court at this time could see no plausible scenario wherein plaintiffs' proffered ambiguity in the plan documents would entitle them to relief, amendment may not be clearly futile. The court is not permitted to construe the contract merely "from its point of view." Skinner, 188 F.3d at 142. Instead, the court must allow plaintiffs an opportunity to plead extrinsic evidence, sufficiently linked to linguistic reference points in the plan documents, tending to show they have plausible LMRA and ERISA breach of contract claims. If plaintiffs are able to allege sufficiently persuasive, well-pleaded facts in an amended complaint to support their claim that the plan terms are ambiguous, they may do so. Under the facts as alleged in the complaint, however, the language is unambiguous and plaintiffs have no vested benefit entitling them to lifetime medical care during retirement.

**B. Count Three**

To make out a breach of fiduciary duty claim under ERISA, "a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation."

8

Romero v. Allstate Corp., 404 F.3d 212, 226 (3d Cir. 2005). The Court of Appeals for the Third Circuit recently clarified the meaning of the fourth element: "[D]etrimental reliance is not limited to the retirement decision alone; rather it may encompass decisions to decline other employment opportunities, to forego the opportunity to purchase supplemental health insurance, or other important financial decisions pertaining to retirement." In re Unisys Corp. Retiree Medical Benefits ERISA Litig., 579 F.3d 220, 229 (3d Cir. 2009); see Shook v. Avaya, Inc., 625 F.3d 69, 73 (3d Cir. 2010) ("In demonstrating sufficient reliance, the plaintiff must have taken some action as a result of the misrepresentation; the mere expectation of a continued benefit is not enough.").

Defendants are correct in arguing that plaintiffs failed to plead sufficient facts showing entitlement to relief with respect to the breach of fiduciary duties claim. Plaintiffs did not plead any facts sufficient for this court to infer detrimental reliance, beyond a mere expectancy that their medical benefits would continue at the same premium cost. They have not pleaded any actions taken in reliance on the alleged misrepresentations. See Shook, 625 F.3d at 73. For those reasons, the court will grant the motion to dismiss without prejudice, and will allow plaintiffs an opportunity to amend their complaint, provided they are able to plead facts sufficient to show a plausible entitlement to relief.

The court declines to entertain the argument raised by defendants that the statute of limitations has run on the breach of fiduciary duty claims. The three-year statute of limitations upon which defendants base their argument is cautiously applied. Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 787 (3d Cir. 2001) (holding that the actual knowledge requirement triggering ERISA's shorter, three-year statute of limitations is interpreted "'stringently'" and sets a "'high standard for barring claims'" (quoting Gluck v. Unisys Corp., 960 F.3d 1168, 1176 (3d Cir. 1992))); see Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co., 311 F.3d 581, 587 (3d Cir. 2002) ("[I]n order to be

barred by the three year statute of limitations the claimant [must] know[] the facts on which he relies to establish a breach of fiduciary duty [and] it must also be established that the claimant knows that he has a cause of action under ERISA, which includes "actual knowledge" of harm inflicted or harmful consequences."); International Union of Elec., Elec. Salaried, Mach. & Furniture Workers v. Murata Erie N. Am., 980 F.2d 889, 900 (3d Cir. 1992) ("Gluck . . . requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA."). But see Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1551-52 (3d Cir. 1996) (holding, without addressing the Murata ruling, that the three-year statute of limitations is triggered merely by knowledge of the material facts necessary to understand that some claim exists).[4] As a defense, defendants have the burden of proof, and defendants were unable to meet their burden by relying on the face of the complaint. See Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (holding that a limitations defense may be raised in a Rule 12(b)(6) motion, but only if the defense is "apparent on the face of the complaint"). This determination is without prejudice to defendants reasserting the defense at some later point in this litigation.

---

[4] The Court of Appeals for the Third Circuit has minimized the import of the Kurz holding, without explicitly ruling that it is inconsistent with Murata, in the series of decisions construing the actual knowledge requirement; Roush and Montrose reaffirmed the requirement that the plaintiff must have knowledge that he has a claim under ERISA, as opposed to mere knowledge of the material elements of the claim. See, e.g., Roush, 311 F.3d at 586-87 (discussing the Kurz holding and noting that the Montrose holding was "of greater significance"). To the extent that the less stringent requirement in Kurz is consistent with other opinions from the Court of Appeals for the Third Circuit, the court finds that it is against the weight of authority, and the court would apply the stricter requirements more recently enunciated. To the extent the opinion is inconsistent with the other opinions from the court of appeals, this court would be bound to follow the earlier enunciation of the rule in Gluck and Murata, which requires knowledge of the material elements *and* knowledge of a claim. See Pardini v. Allegheny Intermediate Unit, 524 F.3d 419, 426 (3d Cir. 2008) ("This Circuit has long held that if its cases conflict, the earlier is the controlling authority and the latter is ineffective as precedents.").

ORDER

AND NOW, this 17th day of April, 2012, it is HEREBY ORDERED that the motion to dismiss (ECF No. 77) is GRANTED.

IT IS FURTHER ORDERED that the complaint is dismissed without prejudice to plaintiff filing an amended complaint on or before April 30, 2012.

By the court,

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge