IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| LARRY LEWIS, KURT SZYMANSKI, KARL BUDAY, ROBERT KLUGH, SR., GREG BITTINGER, RICHARD F. KUSHKOWSKI, JOHN CROCKER and GENE F. DAUM, on behalf of themselves and others similarly situated, | ) ) ) ) ) ) ) | Civil Action No. 11-1619 |
| Plaintiffs, | ) ) | Judge Joy Flowers Conti |
| v. | ) ) | |
| ALLEGHENY LUDLUM CORPORATION and ALLEGHENY TECHNOLOGIES INCORPORATED, | ) ) ) ) | Electronically Filed |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

David L. McClenahan (PA01301)
David J. Kolesar  (PA70439)
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Tel:  412-355-6500
Fax:  412-355-6501
e:  david.mcclenahan@klgates.com
e:  david.kolesar@klgates.com

Dated:  December 10, 2012                    Counsel for Defendants

**TABLE OF CONTENTS**

I.      SUMMARY OF ALLEGATIONS..............................................................1

II.     GOVERNING PLAN PROVISIONS........................................................ 1

III.    ARGUMENT......................................................................................... 2

        A.      Plaintiffs' Claim For Benefits Under The LMRA And ERISA Fails.................... 2

        B.      Plaintiffs' Fiduciary Duty Claim Fails As A Matter Of Law................................ 8

            1.      Plaintiffs' fiduciary duty claim is time-barred........................................... 8

                a.      The three-year limitations period time-bar........................ 8

                b.      The six-year limitations period time-bar.........................15

            2.      Plaintiffs failed to allege a breach or reliance...........................................18

                a.      No misrepresentation or inadequate disclosure............................ 18

                b.      No reliance..................................................................21

        C.      Plaintiffs' New "TAP Subclass" Fails To Save Any Claim................................. 24

IV.     CONCLUSION.................................................................................... 25

EXHIBITS (filed separately)

        1.      1980 CBA*
        2.      1983 CBA*
        3.      1987 CBA*
        4.      1990 CBA*
        5.      1994 CBA*
        6.      1998 CBA*
        7.      2001 CBA*
        8.      2004 CBA*
        9.      2007 CBA*
        10.     2011 CBA*
        11.     1981-1987 PHMB*
        12.     1991 PHMB*
        13.     1994 PHMB*
        14.     1998 PHMB*
        15.     2001 PHMB*
        16.     2004 PHMB*
        17.     2007 PHMB*
        18.     Transcript of the Rule 30(b)(6) Deposition of Joseph Stuligross, Esquire
        19.     Exhibit 19 of the Stuligross Deposition
        20.     Exhibit 20 of the Stuligross Deposition
        21.     Exhibit 21 of the Stuligross Deposition
        22.     Exhibit 22 of the Stuligross Deposition
        23.     Exhibit 23 of the Stuligross Deposition

24.     Exhibit 24 of the Stuligross Deposition
25.     Exhibit 25 of the Stuligross Deposition
26.     Exhibit 26 of the Stuligross Deposition
27.     Exhibit 27 of the Stuligross Deposition
28.     Exhibit 28 of the Stuligross Deposition
29.     Exhibit 29 of the Stuligross Deposition
30.     Exhibit 30 of the Stuligross Deposition
31.     Exhibit 31 of the Stuligross Deposition
32.     Exhibit 32 of the Stuligross Deposition
33.     Exhibit 33 of the Stuligross Deposition
34.     Exhibit 34 of the Stuligross Deposition
35.     Exhibit 35 of the Stuligross Deposition
36.     Exhibit 36 of the Stuligross Deposition
37.     Exhibit 37 of the Stuligross Deposition
38.     Transition Assistance Program (TAP) Frequently Asked Questions


* Exhibits marked with an (*) asterisk (Exhibits 1 through 17) previously have been filed with
the Court multiple times.  Many, although not all, of those Exhibits were filed by Plaintiffs
among the 3,355 pages of exhibits to the Second Amended Complaint.  The full set of
Exhibits 1 through 17 most recently were filed by Defendants in support of Defendants' original
motion to dismiss, with the same Exhibit numbers as those listed above, at Doc. 78 through
Doc. 91.  So as not to burden the Court with yet another copy of those documents, and
considering their significant volume, Defendants simply refer the Court to those previous filings
and incorporate them by reference as Exhibits in support of Defendants' present motion to
dismiss.  If Defendants cite to any of those documents in particular in the following
memorandum, Defendants specifically note that fact and the particular document number where
the exhibit was filed.  If the Court would prefer to have a new set of those documents,
Defendants would be more than happy to supply the Court with an additional set.

## I.  <u>SUMMARY OF ALLEGATIONS</u>

Plaintiffs are eight retired Allegheny Ludlum employees who were members of the United Steelworkers ("Union").[1]  Second Amended Complaint ("SAC") ¶ 1.  Through collective bargaining, Allegheny Ludlum and the Union negotiated retiree health benefits in agreements known as "PHMBs."  *Id.* at ¶¶ 1, 27; *see* Exs. 1-17.[2]  Prior to 2008, retirees were not required to pay for certain types of coverage.  SAC at ¶¶ 4, 48.  By letter dated October 24, 2007, Allegheny Ludlum announced that, effective January 1, 2008, those "no cost" options were being replaced with coverage that required premium payments.  *Id.* at ¶¶ 4, 53.  Additional premium increases were implemented effective January 1, 2012.  *Id.* at ¶¶ 4-6, 55-56, 60.

Plaintiffs claim that the premium increases violated the LMRA and ERISA because their benefits allegedly were "vested, lifetime health benefits" that could not be changed after retirement.  *Id.* at ¶¶ 33, 60-61, 81-89 (Counts I, II).  Plaintiffs also claim that Defendants violated an ERISA fiduciary duty by allegedly representing to them, prior to their retirements, that their benefits "would be provided for life at no cost" and by allegedly failing to inform them that their benefits could be changed by agreement with the Union.  *Id.* at ¶¶ 90-110 (Count III).

## II.  <u>GOVERNING PLAN PROVISIONS</u>

Each PHMB from 1981 through the present contains the following provision:

> Any pensioner or individual receiving a Surviving Spouse's benefit who shall become covered by the Plan established by this Agreement shall not have such coverage terminated or reduced (except as provided in the Plan) so long as the individual remains retired from the Company or receives a Surviving Spouse's benefit, notwithstanding the expiration of this Agreement, **except as the Company and the Union may agree otherwise**.

*See, e.g.*, Ex. 11 (pp. 53-54) (emphasis added); *see also* Exs. 12-17; SAC ¶ 38.

---

[1]  Defendants accept Plaintiffs' allegations as true for purposes of their motion to dismiss only.

[2]  The CBAs and PHMBs may be considered without converting Defendants' motion to dismiss into a motion for summary judgment.  *See* April 17, 2012 Mem. Opinion ("Mem. Op."), at 4, 5.

### III.  ARGUMENT

To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 1953 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2008).  Although a court must accept as true well-pleaded factual allegations in the complaint, "that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted." *Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals . . . supported by mere conclusory statements, do not suffice."), 1953.

### A.   Plaintiffs' Claim For Benefits Under The LMRA And ERISA Fails.

To state a claim for benefits, plaintiffs bear the burden of proving that the employer intended those benefits to be vested. *UAW v. Skinner Engine Co.*, 188 F.3d 130, 138-39 (3d Cir. 1999); *In re Lucent Death Benefits ERISA Litig.*, 541 F.3d 250, 253-54 (3d Cir. 2008).  In determining whether benefits are vested, the written terms of the plan documents are controlling. *In re Unisys Corp. Retiree Medical Benefit ERISA Litig.*, 58 F.3d 896, 902 (3d Cir. 1995); *USW v. PPG Indus., Inc.*, No. 01-1601, 2005 WL 3951072, *13 n.10 (W.D. Pa. Sept. 30, 2005).  When contract language is unambiguous, the Court must determine its meaning as a matter of law. *Skinner*, 188 F.3d at 138, 142.  Although extrinsic evidence may be used to determine whether an ambiguity exists, it may not be used to create an ambiguity where none exists in the contract language. *Id.* at 145-46 ("[T]here must be either contractual language on which to hang the label of ambiguous or some yawning void [that] cries out for an implied term"); *USW v. PPG*, 2005 WL 3951072, at *13 n.10.

An employer's commitment to vest retiree health benefits "is not to be inferred lightly" and "**must be stated in clear and express language.**" *Skinner*, 188 F.3d at 139 (emphasis added); *see also International Chemical Workers Union v. PPG Indus., Inc.*, 236 Fed.

Appx. 789, 793 (3d Cir. 2007).  Thus, the concept of vesting of retiree health benefits should be "narrowly applied."  *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health & Welfare Plan*, 298 F.3d 191, 196 (3d Cir. 2002).  Indeed, in *Skinner*, the Third Circuit created what it called a **"presumption against vesting"** of retiree health benefits.  *Id.*; *see also Local Lodge 470 v. PPG Indus., Inc.*, No. 01-2110, 2006 WL 901927, *14 (W.D. Pa. Mar. 31, 2006).[3] The "clear and express language" required to create vested benefits must be explicit.  *E.g., Skinner*, 188 F.3d at 135, 141; *International Chemical Workers*, 236 Fed. Appx. at 793.

    In this case, every PHMB from 1981 to the present has contained a Continuation of Coverage provision, through which Allegheny Ludlum and the Union reserved their right to change health benefits for current retirees through future agreement.  *See supra* at 1 (quoting the provision).  The provision unambiguously applies to current retirees, and the Court has found that the provision "presumes that the individuals to which it is referring are already retired."  *See* Mem. Op., at 7-8 & n.3.  Thus, the retiree benefits in this case are not vested.  *E.g., Skinner*, 188 F.3d at 142; *Lucent*, 541 F.3d at 252, 256-57; *Unisys*, 58 F.3d at 904-06; *see* August 29, 2012 Transcript ("8/29/12 Tr."), at 6.  Indeed, the Court has determined that the foregoing meaning of the provision is "plain on its face" and "clearly unambiguous."  *See* 8/29/12 Tr., at 6, 57.

    In their Second Amended Complaint, Plaintiffs still have failed to identify any "clear and express language" in the PHMBs that Allegheny Ludlum intended to confer unalterable, vested health benefits on retirees throughout their lifetime, and there is no such language.  In giving Plaintiffs repeated opportunities to amend their complaints, the Court directly instructed Plaintiffs to identify "linguistic reference points in the plan documents" (*see*

---

[3]  While creating a presumption against vesting, the Third Circuit also expressly rejected the so-called "*Yard-Man* inference" in favor of vesting that exists in the Sixth Circuit, derived from the decision in *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983).

Mem. Op., at 8), and admonished Plaintiffs that it was "important to make sure . . . you put in some kind of textual reference" in their attempt to show vested benefits. *See* 8/29/12 Tr., at 57. Despite those instructions, Plaintiffs have failed to add any allegations containing new or different language from the plan documents beyond what they already had cited in their previous complaints and which the Court already has held were legally insufficient to state a claim.[4]  *See* SAC ¶¶ 33-48.  There simply is no language in the PHMBs creating vested, unalterable benefits.

Because they cannot establish vested, unalterable benefits on the basis of the contractual language as they were required to do, Plaintiffs again attempt to create ambiguity in the Continuation of Coverage provision by resorting to extrinsic evidence.  Indeed, the only new allegations that Plaintiffs have added to bolster their claims in Counts I and II are in paragraphs 41 through 44, in which they simply offer new extrinsic evidence.  Without "linguistic reference points" or other "textual reference," however, Plaintiffs cannot use extrinsic evidence to create an ambiguity in an agreement that is "clearly unambiguous."  *See, e.g.*, 8/29/12 Tr., at 6, 57; Mem. Op., at 8; *Skinner*, 188 F.3d at 145-46.  Thus, no extrinsic evidence should be considered.

Even if it is considered, however, Plaintiffs' extrinsic evidence creates no ambiguity.  Plaintiffs principally rely on the Rule 30(b)(6) deposition testimony of Joe Stuligross, Associate General Counsel of the Union.  *See* SAC ¶¶ 41-42, 44.  Despite Plaintiffs'

---

[4]  Despite the fact that the Court repeatedly has stated that arguments based on the *Yard-Man* decision and other Sixth Circuit law are insufficient to state a claim in the Third Circuit, Plaintiffs continue to rely on such principles in their Second Amended Complaint.  For example, Plaintiffs continue to argue that the Continuation of Coverage clause "can only be interpreted" to apply to active employees because retirees are no longer within the bargaining unit, cannot vote on CBAs, and did not consent to any changes to their benefits.  *See* SAC ¶¶ 39-40, 44.  Those contentions, although permitted under *Yard-Man*, have been explicitly rejected by the Third Circuit.  *See Skinner*, 188 F.3d at 139-47.  Similarly, Plaintiffs' statement that the Union's Rule 30(b)(6) deposition witness "admitted that the factors used to determine whether vesting was intended were present" (*see* SAC ¶ 42), is based on the fact that the PHMBs contain Medicare and pension eligibility provisions.  Such provisions, however, are vesting factors under *Yard-Man* and Sixth Circuit law, but not under Third Circuit law.  *See, e.g., Skinner*, 188 F.3d at 139-47.

4

misportrayal of that testimony, Mr. Stuligross unequivocally rejected each of Plaintiffs'

contentions as to the meaning and intent of the Continuation of Coverage provision:

- Mr. Stuligross unequivocally agreed with Defendants' (and the Court's) interpretation that the provision "makes clear that [retiree health] coverage can be terminated or reduced where the company and the union agree." *See* Stuligross Dep. (attached as Ex. 18), at 175, 237-38; *see also id.* at 43-44.

- He unequivocally testified that, over the 50 years that the provision has been in place, "[t]he union's understanding of the continuation of coverage provision has not changed." *Id.* at 184.

- He unequivocally testified that the Union believes that the provision applies to "current retirees." *E.g., id.* at 45, 175.

- He unequivocally testified that the provision allows the Union and Allegheny Ludlum to agree not merely to enhance retiree health benefits, but also to agree to make those benefits less favorable for current retirees, including by agreeing to reduce or terminate them. *E.g., id.* at 45, 52-53, 176-78.

- He unequivocally testified that the Union believes it has the authority to enter into such agreements to change, reduce, or terminate health benefits for current retirees, even though they are no longer members of the bargaining unit represented by the Union under the NLRA. *E.g., id.* at 23-27, 179, 237-38.

- He unequivocally testified that, when the Union and Allegheny Ludlum entered into their many agreements over several decades to change retiree health benefits, including by making them less favorable for current retirees, the Union intended those changes to apply to current retirees and those changes, in fact, applied to current retirees when they were implemented. *E.g., id.* at 180-232 *passim* & Stuligross Dep. Exs. 19-37 (attached as Exs. 19-37).

- He unequivocally testified that the Union disagrees with Plaintiffs' interpretation of the provision, and even that he explained to Plaintiffs' counsel as early as August 2012 that the Union disagrees with Plaintiffs' position. *See id.* at 179-80; *see also id.* at 172-80 (concisely summarizing the Union's position).

In light of Mr. Stuligross' consistent and thorough testimony flatly negating

Plaintiffs' contentions, Plaintiffs' attempt to portray his testimony as somehow supporting their

position is disingenuous and simply wrong.  Plaintiffs quote him as using the word "vested" to

describe the retiree health benefits, but Plaintiffs fail to inform the Court about Mr. Stuligross'

explanation of what he meant by that expression, including by quoting only partial answers and

omitting his testimony that the benefits can be changed by agreement:  "I mean, certainly the

benefits continue beyond the expiration of the agreement, so to that extent they are vested, **but it doesn't mean that they can't be changed during the remainder of the retiree's lifetime.**" *Id.* at 63 (emphasis added to show what Plaintiffs failed to quote); *see also id.* at 76 ("**Q.  In other words, you can reduce that retiree's benefits and increase his costs even if they are vested? A.  Yes.**  Again, they are vested subject to the continuation of coverage clause." (emphasis added to show what Plaintiffs failed to quote); *see also id.* at 44 ("I believe the term 'vested' is kind of a loaded term."), 49-52.  Indeed, Plaintiffs' misportrayal of Mr. Stuligross blatantly ignores his following testimony, which unequivocally negates the characterization Plaintiffs seek to advance:

> Q.     When you referred to the benefits in this case as vested in any way, did you ever mean to suggest that you believed that those benefits were vested such that they could never be changed even by an agreement between Allegheny Ludlum and the union?
>
> A.     **The union does not hold that view; right.**

*Id.* at 235-36 (emphasis added).  Thus, contrary to Plaintiffs' mischaracterization, Mr. Stuligross was abundantly clear that the retiree health benefits at issue **can** be reduced or terminated by agreement between Allegheny Ludlum and the Union.  *See also id.* at 43-64, 172-245.  Far from creating an ambiguity in the Continuation of Coverage provision, Mr. Stuligross confirmed the unambiguous meaning of the provision as stated by Defendants and as determined by the Court.

Aside from Mr. Stuligross' testimony, the only other new piece of extrinsic evidence offered by Plaintiffs to support Counts I and II is a 2005 article by William Payne, Esquire.  *See* SAC ¶ 43 & Ex. 15.  Despite Plaintiffs' references to him as "Union counsel" and the "Union lawyer," *see id.*, Mr. Payne is outside counsel for the Union and is engaged in the private practice of law with the firm of Stember Feinstein Doyle Payne & Kravec.  *See* Stuligross Dep. 2.  He does not speak for the Union and his deposition was not taken in this case.  His statements, therefore, cannot create ambiguity in the agreement between Allegheny Ludlum and

the Union.  Moreover, the article was a piece of legal advocacy for "union retirees and their advocates," was published in a legal journal called <u>Trial</u>, and was based largely on citations to Sixth Circuit law, including *Yard-Man*, which is contrary to Third Circuit law.  *See* SAC ¶ 43 & Ex. 15, at p. 1 & nn.3-47.  Indeed, the quotation from the article that Plaintiffs include in their Second Amended Complaint to suggest that the Continuation of Coverage clause provides for vested benefits cites two decisions, one from the Sixth Circuit and one from the Eleventh Circuit, both of which cite to and rely on Sixth Circuit law in general and on *Yard-Man* in particular.  *See* SAC ¶ 43 & Ex. 15, at 2 & n.16.  Mr. Payne's article creates no ambiguity in this case.

Aside from the two pieces of new extrinsic evidence discussed above, Plaintiffs offer no new allegations in support of Counts I and II.  Instead, they rely on the same allegations that were set forth in their First Amended Complaint, which allegations the Court already ruled were insufficient to state a claim.  *See* 8/29/12 Tr., at 6, 62, 66.  In particular, Plaintiffs attach legal briefs from two unrelated lawsuits in the Sixth Circuit, claiming that they show that the Union "recognizes it does not have the power to bargain away or reduce retiree benefits."  *See* SAC ¶¶ 40 & Exs. 12 & 13.  Aside from the fact that Plaintiffs' contention was explicitly rejected by the Union's Rule 30(b)(6) witness in this case, *see* Stuligross citations *supra*, that extrinsic evidence fails to create an ambiguity in the Continuation of Coverage provision for many reasons, including that those cases are from a different jurisdiction (the Sixth Circuit), applying different law (*Yard-Man* and its progeny), concerning different issues (whether vested benefits may be unilaterally terminated), between different parties (neither Defendant in this case was involved in those cases), and **the Continuation of Coverage provision was not even present in the agreements between the parties in those cases**.  *See also* Stuligross Dep. 80-81

(differentiating the *Tackett* cases from this case).  This Court already has stated that the *Tackett* cases do not show ambiguity in the Continuation of Coverage clause.  *See* 8/29/12 Tr., at 8-16.

Finally, as in their prior complaint, Plaintiffs assert that there are "internal inconsistencies" between the Continuation of Coverage clause and the remainder of the PHMB – but they never identify those "internal inconsistencies," and there are none.[5]  *See* SAC ¶ 45.

In short, Plaintiffs still "have not confronted the text of the continuation of coverage provision in arguing that an ambiguity exists."  *See* Mem. Op., at 7 n.3.  The governing language is unambiguous:  Allegheny Ludlum and the Union can agree to change retiree health benefits for current retirees.  Counts I and II accordingly should be dismissed with prejudice.

### B.      Plaintiffs' Fiduciary Duty Claim Fails As A Matter Of Law.

#### 1.      Plaintiffs' fiduciary duty claim is time-barred.

ERISA prohibits filing suit for alleged fiduciary violations more than six years after "the date of the last action which constituted a part of the breach or violation," or more than three years after the plaintiff had "actual knowledge of the breach or violation," whichever is earlier.  *See* 29 U.S.C. § 1113; *International Union of Elec., Elec. Salaried, Mach. & Furniture Workers v. Murata Erie N. Am.*, 980 F.2d 889, 898 (3d Cir. 1992); *see also Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 787 (3d Cir. 2001).

#### a.      The three-year limitations period time-bar.

The Third Circuit has established the standard for determining when "actual knowledge" exists for purposes of ERISA's three-year limitations period as follows:

---

[5]  To the extent they may be referring to the other provisions quoted in the Second Amended Complaint, *see* SAC ¶¶ 34-38, 46-47, that attempt to create an ambiguity fails.  First, there is no inconsistency between those provisions and the Continuation of Coverage provision.  Second, Plaintiffs' contentions again are based on the Sixth Circuit's *Yard-Man* decision, which has been explicitly rejected by the Third Circuit.  *See, e.g., Skinner*, 188 F.3d at 139-47; *Local Lodge 470*, 2006 WL 901927, at *8-13; *USW v. PPG*, 2005 WL 3951072, at *9.

> We hold that, under 29 U.S.C. § 1113(2), "actual knowledge of a breach or violation" requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, **knowledge of a transaction's harmful consequences, or even actual harm**. We emphasize, however, that our holding does **not** mean that the statute of limitations can never begin to run until a plaintiff first consults with a lawyer. . . . We disagree that mere knowledge of a transaction is **always** enough. "Actual knowledge of a breach or violation" requires knowledge of all relevant facts at least sufficient to give the plaintiff knowledge that a fiduciary duty has been breached or [an] ERISA provision violated.

*Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177-78 (3d Cir. 1992) (emphasis added; citations and footnote omitted). The court also plainly stated: "A plaintiff must **know of an injury** before he may have actual knowledge of a breach of duty." Id. at 1178 n.6 (emphasis added).

The *Gluck* standard is a "two-prong test" requiring that the plaintiff know (i) "not only of the events that occurred which constituted the breach or violation, but also [(ii)] that those events supported a claim of breach of fiduciary duty or violation under ERISA." *Murata*, 980 F.2d at 900; *Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co.*, 311 F.3d 581, 586 (3d Cir. 2002). Consistent with *Gluck*, *see* 960 F.2d at 1177, the court in *Roush*, on two occasions, described the second prong as consisting of "**actual knowledge of harm or harmful consequences.**" *Roush*, 311 F.3d at 587 (emphasis added) (citing *Montrose*).

Although *Gluck* sets a "high standard" for barring fiduciary duty claims, *e.g.,* *Montrose*, 243 F.3d at 778, the standard is not so high that it can never be met.[6] Defendants' research has uncovered eight Third Circuit decisions since 1992, cited below, addressing whether ERISA fiduciary duty claims are barred by the three-year limitations period. Of those eight

---

[6] The Third Circuit repeatedly has emphasized that it is **not** necessary for a plaintiff to consult with a lawyer to obtain "actual knowledge" that an ERISA claim exists; rather, a plaintiff can obtain "actual knowledge" that a claim exists based on other facts and information. *See, e.g., Gluck*, 960 F.2d at 1177; *Montrose*, 243 F.3d at 787; *Connell v. Trustees of the Pension Fund of the Ironworkers District Counsel*, 118 F.3d 154, 157 (3d Cir. 1997); *Koert v. GE Group Life Assurance Co.*, 231 Fed. Appx. 117, 121 (3d Cir. 2007).

decisions, all of which apply the legal standard articulated above, **four** find that the plaintiffs did not have "actual knowledge," and **four** find that the plaintiffs did have "actual knowledge."

The four decisions finding no "actual knowledge" involved situations where the ERISA violation was a technical violation, or the defendant issued misleading statements about its actions, or the plaintiffs did not know of the "harmful consequences" of the violation and had not yet suffered "actual harm." *See Gluck*, 960 F.2d at 1178-79 (finding no "actual knowledge" where the alleged violation was "technical" and was "disguise[d]" by misleading company statements that would have "required a review of the plan document and of the plan's balance sheet" to discern a violation); *Murata*, 980 F.2d at 901 (finding no "actual knowledge" where the plaintiffs had no knowledge that a plan amendment could harm them and had not yet suffered any actual harm); *Montrose*, 243 F.3d at 787-88 (finding no "actual knowledge" where the plaintiffs had no knowledge that they had suffered actual harm); *Roush*, 311 F.3d at 587 (finding no "actual knowledge" where the plaintiff had not yet suffered actual harm and had no knowledge he would be harmed); *see also* Doc. 123, at 7-8 (discussing the cases in more detail).

By contrast, when plaintiffs have suffered "actual harm" or know of the "harmful consequences" of a fiduciary's actions, the Third Circuit repeatedly has held that they have "actual knowledge" triggering the three-year limitations period. *See Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1551 (3d Cir. 1996) (holding plaintiffs gained "actual knowledge" when they learned of the "harmful consequences" of the fiduciary's actions in the form of monetary cost to them); *Connell*, 118 F.3d at 158 (holding plaintiffs gained "actual knowledge" when they learned of the "consequential [monetary] injury" they would suffer because of the fiduciary's actions); *Cetel v. Kirwan Fin. Group., Inc.*, 460 F.3d 494, 511-12 (3d Cir. 2006) (holding plaintiffs gained "actual knowledge" when they learned that they faced financial penalties in "direct

10

contradiction" to what they had been told by the fiduciary); *Koert*, 231 Fed. Appx. at 121 (holding plaintiffs gained "actual knowledge" when the fiduciary made an "outright repudiation" of its prior alleged statements); *see also* Doc. 123, at 8-9 (discussing the cases in more detail).

   In light of the foregoing authorities, Plaintiffs' fiduciary duty claim in this case is time-barred.  Plaintiffs claim that, prior to their retirements, Defendants violated a fiduciary duty by informing them that their benefits would be "for life at no cost" and/or that they could not change after retirement.  *E.g.*, SAC ¶¶ 49, 96, 101.  Plaintiffs' allegations satisfy the first prong of the two-prong test for "actual knowledge" because they show that Plaintiffs knew of the events that constituted the alleged fiduciary violation – that is, they knew of Defendants' alleged misrepresentations about their benefits.  *E.g., id.* at ¶¶ 49-50; *see, e.g., Murata*, 980 F.2d at 900.

   As for the second prong, the allegations in the Second Amended Complaint and the documents attached to it establish that Plaintiffs actually knew that those events supported a claim of breach of fiduciary duty by no later than **May 2004.**  In particular, in **May 2004**, Plaintiffs and all Union members were explicitly informed in writing that Allegheny Ludlum and the Union had agreed that, effective January 1, 2008, Allegheny Ludlum's obligation to contribute toward retiree health benefits for current retirees would be capped, and that the current retirees would then be responsible for paying premiums for their coverage over and above that cap according to a specific methodology (which provided that the retirees' premiums would continue to rise as the costs of their coverage rose), even for Basic and HMO coverage, which previously had been at no cost to retirees.[7]  *See* Stuligross Dep. 212-15 & Ex. 30 (**May 2004** Union Summary), at 15; *see also id.* at

---

[7]  All documents cited in this paragraph may be considered on Defendants' motion to dismiss because each was attached to the SAC, was filed previously with the Court, and/or was attached as an exhibit to the Stuligross deposition transcript, which was attached to the SAC.  For example, the May 2004 Union Summary (Exhibit 30 hereto) not only was previously filed with the Court, but is Exhibit 30 to the Stuligross deposition, and also is the full version of Exhibit 18 to the SAC.

189-95, 215-20, 223-29 & Exs. 24 (the 2004 PHMB, showing the **May 2004** agreement to increase premiums for all current retirees effective January 1, 2008 according to a specified methodology), 25 (the 2007 PHMB, showing that the **May 2004** agreement to increase premiums for current retirees actually went into effect), 31 (**May 6, 2004** letter agreement with the Union, fixing the dollar amount of the cap on Allegheny Ludlum's obligation and the methodology for determining the amount of premiums that retirees would be required to pay over time, including for Basic and HMO coverage), 34 & 35.  Indeed, after receiving the 2004 Summary, the Union members voted to ratify that agreement to pay increased premiums as retirees in the future.  *See id.* at 214-15.

Thus, the Second Amended Complaint and the documents attached to it establish that the mechanism by which Plaintiffs' retiree health premiums increased in 2008 and 2012 was agreed to by Allegheny Ludlum and the Union and was expressly communicated to Plaintiffs and all Union members in **May 2004**.  As of that date, Plaintiffs actually knew:  (i) their retiree health benefits were **not** "free for life" or "frozen" as of their retirements; (ii) effective January 1, 2008, they would be required to pay increased premiums as retirees for all types of health coverage, even those types that previously had been at no cost to retirees; (iii) the methodology by which premium rates for current retirees would be calculated in the future would cause their rates as retirees to continue to increase as the cost of health care increased; and (iv) the higher and increasing cost for their benefits was directly contrary to what Defendants allegedly told them about the cost of their benefits.  Their knowledge of those "harmful consequences" and of the fact that they would suffer "actual harm" in the form of increased retiree premiums constitutes "actual knowledge" of a violation under the Third Circuit authorities above.  Because they had "actual knowledge" in **May 2004** but did not file any claim until November 21, 2011, Plaintiffs are time-barred under the three-year limitations period by more than four years.

Moreover, even if the May 2004 Summary, the 2004 PHMB, and the other documentation above did not give Plaintiffs "actual knowledge" that they would be required to pay increased premiums as retirees, which they did, Plaintiffs further allege that, on October 24, 2007, Defendants reaffirmed the May 2004 cap agreements and informed Plaintiffs that their benefits indeed were **not** "free for life" or "frozen" at their retirements, but rather that they would be required to pay increased premiums beginning on January 1, 2008, as had been agreed in 2004.[8] *See* SAC ¶¶ 4, 53.  The October 24, 2007 communication again gave Plaintiffs actual knowledge that their retiree health benefits were **not** "free for life" or "frozen" at retirement, and that they would suffer the "harmful consequences" and "actual harm" of premium increases beginning on January 1, 2008, all of which was directly contrary to what Defendants allegedly told Plaintiffs.

Plaintiffs' fiduciary duty claim is not one of a "technical" violation of ERISA or one concealed by misleading statements.  *Cf. Gluck*, 960 F.2d at 1178-79.  To the contrary, the 2008 and 2012 premium increases were openly announced by Allegheny Ludlum and the Union over the last eight years, beginning in May 2004 and reaffirmed on October 24, 2007 – Plaintiffs were explicitly informed on those dates that, beginning in 2008, Allegheny Ludlum's obligation to contribute to their retiree health care would be capped, the "no cost" options for retiree health benefits would cease to exist, and all retirees would be required to pay more for their health care according to a methodology that would require them to pay more over time to the extent that the cost of health care increased.  *See, e.g.*, Stuligross Dep. 189-95, 212-20, 223-29 & Exs. 24, 25, 30, 31, 34, 35; SAC ¶¶ 4, 53, 55, 56.  That information "[stood] in direct contradiction to the representations [allegedly] made by defendants."  *Cetel*, 460 F.3d at 512.  The "'harmful

---

[8]  Plaintiffs' suggestion that the January 2008 increase did not give them "actual knowledge" because it was smaller than the January 2012 increase, *e.g.*, SAC ¶¶ 53, 55, 105, not only is not a factual allegation, but is contrary to law.  Misrepresentations and vesting are not matters of degree.  *Skinner*, 188 F.3d at 139.  If a premium can be increased, it is neither "free" nor "frozen."

consequences' of the change were obvious."  *Kurz*, 96 F.3d at 1551.  Increasing the premiums

was an "outright repudiation" of the statements Defendants allegedly had made to Plaintiffs.

*Koert*, 231 Fed. Appx. at 121.  Plaintiffs accordingly had "actual knowledge" that some claim

existed:  "There was nothing left for them to discover and nothing more for them to do but to file

suit or to seek legal counsel."  *Connell*, 118 F.3d at 158.  Because Plaintiffs waited more than

seven years from May 2004, and more than four years from October 2007 to initiate this action,

Plaintiffs' fiduciary duty claim is time-barred under the three-year limitations period.[9]

        At various stages of this litigation, Plaintiffs have attempted to argue that the

January 1, 2012 premium increase was a separate violation from the January 1, 2008 premium

increase, and therefore that that second event started a new limitations period.  Under the law,

however, **neither** event constituted a fiduciary violation because a company does not act in a

fiduciary capacity when it amends an ERISA plan.  *E.g., Curtiss-Wright Corp. v. Schoonejongen*,

514 U.S. 73, 78 (1995).  Rather, amending an ERISA plan is a non-fiduciary act that does not

implicate fiduciary obligations.  *Id.*; *see also In re Unisys Corp. Retiree Med. Benefits "ERISA"*

*Litig.*, 579 F.3d 220, 228 (3d Cir. 2009); *Leuthner v. Blue Cross & Blue Shield*, 454 F.3d 120,

127 (3d Cir. 2006).  Thus, Allegheny Ludlum's agreements with the Union to amend the PHMBs

in 2007 and in 2011 are not, and cannot be, ERISA fiduciary violations, and neither event "reset

the clock" on Plaintiffs' time-barred claim.[10]  Defendants respectfully submit that Plaintiffs'

fiduciary duty claim is time-barred and should be dismissed with prejudice.

---

[9]  When plaintiffs suffer "actual harm," the Third Circuit consistently holds that they have "actual knowledge" triggering the three-year limitations period.  *See, e.g., Gluck*, 960 F.2d at 1177-79; *Roush*, 311 F.3d at 587; *Connell*, 118 F.3d at 158; *Cetel*, 460 F.3d at 511-12.  Thus, even if Plaintiffs gained "actual knowledge" on January 1, 2008, when they suffered "actual harm" by actually paying higher premiums, they still exceeded the three-year period by eleven months.

[10]  Plaintiffs Szymanski, Klugh, Bittinger, Crocker, Daum, and Kushkowski retired in 2002, 2002, 2005, 2006, 2006, and 2006, respectively, *see* SAC ¶¶ 10-15, and their fiduciary claim is

**b.**     **The six-year limitations period time-bar.**

In addition to being time-barred under Section 1113's three-year limitations

period, Plaintiffs' fiduciary duty claim is also time-barred under Section 1113's general six-year

limitations period.  Section 1113(1) prohibits filing suit more than six years after "the date of the

last action which constituted a part of the breach or violation."[11]  29 U.S.C. § 1113(1).

The two leading Third Circuit decisions on the accrual of fiduciary duty claims

are *Ranke* and *Unisys III*, in which the court articulated precisely what constitutes "the date of

the last action which constituted a part of the breach or violation."  Specifically, the court held

that "any breach that may have occurred was completed, and a claim based thereon accrued, no

later than the date upon which the employee relied to his detriment on the misrepresentations."

*Unisys III*, 242 F.3d at 505-06; *Ranke*, 436 F.3d at 202; *see also Keen*, 486 F. Supp. 2d at

492-93.  A plaintiff does not need to suffer "actual harm" for his claim to accrue, and a claim

may accrue long before a plaintiff suffers or learns of any actual harm.  *E.g., Unisys III*, 242 F.3d

---

time-barred for the reasons set forth.  Plaintiffs Lewis and Buday retired in 2009, *e.g., id.* at ¶ 9,
**after** the October 24, 2007 letter announced that retiree premiums were being increased.  Thus,
Plaintiffs' Lewis' and Buday's fiduciary claims also fail because they cannot claim not to have
known, at the time they retired, that retiree premiums could be increased.

[11]  Section 1113(1) also provides that, "in the case of an omission," a claim may not be filed more
than six years after "the latest date on which the fiduciary could have cured the breach or
violation."  29 U.S.C. § 1113(1)(B).  The SAC, however, does not set forth any factual allegations
suggesting that the fiduciary claim is based on an "omission" that would trigger that provision, but
rather merely contains "boilerplate" recitations that Defendants made "material and actionable
omissions."  *See, e.g.*, SAC ¶ 95.  In any event, a fiduciary who fails to correct its employees'
mistaken belief breaches its fiduciary duty through an "act," **not** through an "ongoing omission."
*E.g., In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242 F.3d 497, 502-05 (3d Cir. 2001)
("*Unisys III*"); *Keen v. Lockheed Martin Corp.*, 486 F. Supp. 2d 481, 492-93 (E.D. Pa. 2007).
Thus, the provisions of Section 1113(1)(B) do not apply to the claim in this case.
      Similarly, the "fraud or concealment" provision of Section 1113 does not apply.  For that
provision to apply, the Third Circuit requires that the defendant took "affirmative steps to hide an
alleged breach of duty from a beneficiary," which steps are separate and apart from the underlying
alleged misrepresentation.  *E.g., Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 203-05 (3d Cir.
2006); *Keen*, 486 F. Supp. 2d at 493.  No such "affirmative steps" have been pleaded in this case
or are a part of Plaintiffs' claim.  Thus, the "fraud or concealment" provision does not apply.

at 505-06; *Ranke*, 436 F.3d at 202, 205 ("ERISA's general six-year statute of limitations is triggered by a fiduciary's action, not a beneficiary's discovery of the breach.").

Moreover, only the plaintiff's **<u>first</u>** detrimental reliance on a misrepresentation counts for purposes of being "the last action" and upon which the claim accrues – subsequent reliance on the same misrepresentation does not count.  *E.g., Ranke*, 436 F.3d at 203.  Thus, a plaintiff cannot "reset the clock" on his limitations period by claiming repeatedly to rely on the same misrepresentation.  *Id.*; *see also Keen*, 486 F. Supp. 2d at 492-93.  In other words, there is no "continuing detrimental reliance" under Third Circuit law.

A repeated misrepresentation similarly does not "reset the clock" on the limitations period.  A plaintiff therefore cannot claim that the repetition of a misrepresentation restarts his limitations period.  *E.g., Ranke*, 436 F.3d at 203; *Keen*, 486 F. Supp. 2d at 493. Further, an employer who fails to correct its employees' mistaken belief breaches its duty through an "act," not through an "ongoing omission."  *Unisys III*, 242 F.3d at 505; *Keen*, 486 F. Supp. 2d at 492.  Thus, an employer's "continuing" failure to correct a mistaken belief does not continually restart a plaintiff's limitations period.  *Id.* at 492-93; *Ranke*, 436 F.3d at 203; *see also Martin v. Public Service Elec. & Gas Co.*, 271 Fed. Appx. 258, 261 (3d Cir. 2008).

Based on the foregoing authorities, Plaintiffs' fiduciary duty claim in this case accrued "no later than the date upon which [Plaintiffs] relied to [their] detriment" on the alleged misrepresentations by Defendants.  *E.g., Ranke*, 436 F.3d at 202.  According to their allegations, Plaintiffs relied to their detriment when they decided to retire from Allegheny Ludlum.  *See* SAC ¶¶ 49-52, 57, 98-102.  Plaintiffs Szymanski and Klugh retired in 2002.  *Id.* at ¶¶ 10-11.  Thus, their fiduciary duty claim accrued in 2002 and their limitations period expired in 2008.  Because they filed this lawsuit on November 18, 2011, their fiduciary duty claim is time-barred under the

six-year limitations period.  Plaintiff Bittinger retired on November 1, 2005.  *See id.* at ¶ 12 & Att. 2 (Bittinger Dec. ¶ 3).  Thus, his fiduciary duty claim accrued on that date and his limitations period expired on November 1, 2011.  Because Plaintiff Bittinger joined this litigation as a Plaintiff on April 30, 2012, and the litigation was filed on November 18, 2011, he also exceeded the six-year limitations period and his fiduciary claim is also time-barred.

With respect to newly named Plaintiffs Kushkowski, Crocker, and Daum, they retired on January 1, 2006, August 31, 2006, and October 31, 2006, respectively.  *See* SAC ¶¶ 13-15 & Att. 2 (Kushkowski Dec. ¶ 3; Crocker Dec. ¶ 3; Daum Dec. ¶ 4).  Their limitations periods thus expired on January 1, 2012, August 31, 2012, and October 31, 2012, respectively.  Because they just recently asserted claims in this case on November 12, 2012, all three also exceeded the six-year limitations period and their fiduciary claims are also time-barred.[12]

In their Second Amended Complaint, as at the August 29, 2012 argument, Plaintiffs try to escape the six-year time-bar by contending that their claims did not accrue until Allegheny Ludlum amended the PHMBs and they suffered "actionable losses" in the form of increased premiums in 2008 and 2012.  *See* SAC ¶¶ 98-99; 8/29/12 Tr., at 19-27.  That contention, however, is squarely negated by Third Circuit authority, which provides that a plaintiff does **not** need to suffer "actual harm" for his claim to accrue, and a claim may accrue long before a plaintiff suffers or learns of any actual harm.  *E.g., Unisys III*, 242 F.3d at 505-06; *Ranke*, 436 F.3d at 202, 205.  Moreover, Plaintiffs once again are attempting to confuse their

---

[12]  Because the six-year limitations period is a statute of repose, *see, e.g.*, 8/29/12 Tr., at 22; *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 199-200 (3d Cir. 2007), it is an "absolute time limit beyond which liability no longer exists and is not tolled for any reason."  *See, e.g., Williams v. Wells Fargo Home Mortgage, Inc.*, 410 Fed. Appx. 495, 499 (3d Cir. 2011); *Lampf v. Gilbertson*, 501 U.S. 350, 363 (1991).  Thus, tolling under *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), does not apply to the newly named Plaintiffs.  Also, because Plaintiffs Crocker and Daum's claims arise under the entirely new facts of the "TAP subclass," *see* SAC ¶¶ 2, 71, their claims do not relate back under Rule 15(c).  *E.g., Nelson v. County of Allegheny*, 60 F.3d 1010, 1014-15 (3d Cir. 1995).

fiduciary duty claim with their contract claims in Counts I and II – although amending an ERISA

plan can form the basis of a contract-based claim, it cannot be the basis of a fiduciary duty claim

because amending an ERISA plan is not a fiduciary act.  *E.g., Schoonejongen*, 514 U.S. at 78;

*Unisys*, 579 F.3d at 228.  Plaintiffs' fiduciary duty claim is time-barred.

### 2.     Plaintiffs failed to allege a breach or reliance.

To state an ERISA fiduciary duty claim, each[13] Plaintiff must show, among other

elements, that an ERISA fiduciary (i) "made affirmative misrepresentations or failed to

adequately inform plan participants," (ii) on which that Plaintiff justifiably relied.  *E.g., Shook v.

Avaya, Inc.*, 625 F.3d 69, 73 (3d Cir. 2010).  Plaintiffs have failed to set forth factual allegations

sufficient to show the plausibility of either element.  *E.g., Iqbal*, 129 S. Ct. at 1949.

### a.     No misrepresentation or inadequate disclosure.

With respect to pleading a misrepresentation or an inadequate disclosure,

Plaintiffs set forth virtually no factual allegations.  Instead, Plaintiffs repeatedly set forth

formulaic recitations, such as that Defendants committed "breaches of fiduciary duty including

written and verbal misrepresentations, materially incomplete information and/or actionable

omissions."  *See, e.g.*, SAC ¶¶ 50, 57, 95, 96, 97, 98, 99, 100.  Such allegations are not factual,

but rather are conclusory assertions and "threadbare recitals of the elements of [the] cause of

action," which are insufficient to state a claim.  *Iqbal*, 129 S. Ct. at 1949.

The only allegations concerning misrepresentations or inadequate disclosures that

are even arguably factual are set forth in paragraphs 49, 58, and 59 of the Second Amended

Complaint.  In those paragraphs, Plaintiffs purport to describe five alleged misrepresentations by

Defendants.  Plaintiffs first attach a 2002 letter that stated that Allegheny Ludlum "pays the full

---

[13] Because this case has not been certified as a class action, and may never be certified, each
individual Plaintiff must set forth factual allegations sufficient to establish his own fiduciary duty
claim; otherwise, that Plaintiff's claim must be dismissed as insufficient as a matter of law.

cost of Basic coverage." *See* SAC ¶ 49 & Ex. 16.  That statement, however, was entirely truthful. *See, e.g.*, Ex. 15 (2001 PHMB).  Moreover, although Plaintiffs fail to mention it, that letter also specifically informed employees that, "[e]ach year, we announce new monthly premium rates for retiree medical coverage," and advised them where they can find the "new" monthly premium rates.  *See* SAC Ex. 16.  Next, Plaintiffs attach a flyer from 1997 that stated that, at that time, HMO coverage was "no cost."  *See* SAC ¶¶ 59 & Ex. 20.  Once again, that statement was entirely truthful.  The flyer also advised employees where they could go for additional information and to have questions answered.  *Id.*  Neither the 2002 letter nor the 1997 flyer supports Plaintiffs' assertion of a material misrepresentation or inadequate disclosure.

　　　　　Plaintiffs' final three allegations regarding alleged misrepresentations by Allegheny Ludlum fail outright because the allegations concern statements by the **Union**, not by Allegheny Ludlum.  *See* SAC ¶¶ 49, 58 & Exs. 17 (2001 Union Summary), 18 (2004 Union Summary), & 19 (Union website); *see also* Exs. 29 & 30 hereto (full versions of the Summaries showing they were prepared by the Union); *see also* 8/29/12 Tr., 50-51.  Because they are statements by the Union, they do not support Plaintiffs' assertion that Defendants made material misrepresentations.  *E.g., Shook*, 625 F.3d at 73.  Moreover, on its face, the May 2004 document informed Plaintiffs that, **as of January 1, 2008, the premium rates for current retirees would be increased, including for coverage that previously had been "no cost."**  *See* Ex. 30, at p. 15; *see also supra* at 11-14.  Thus, far from being a misrepresentation, that document explicitly advised Plaintiffs that retiree premiums would increase.

　　　　　Moreover, although the mere existence of an SPD does not always negate a fiduciary duty claim, the content of an SPD (i.e., the PHMB (*see* SAC ¶ 1)) must be considered in determining whether a statement is "materially misleading" for purposes of a fiduciary duty

claim.  *E.g., Unisys III*, 242 F.3d at 508.  In this case, every PHMB from 1981 to the present has

contained the Continuation of Coverage provision, which the Court has stated is "plain on its

face" and "clearly unambiguous" that retiree health benefits for current retirees can be

terminated or reduced by agreement between Allegheny Ludlum and the Union.  *See* 8/29/12 Tr.,

at 6, 57.  In light of such clear and unambiguous language, Plaintiffs have failed to allege any

statement by Allegheny Ludlum that was materially misleading.  *Unisys III*, 242 F.3d at 508.

Plaintiffs' "Corrected Declarations" also fail to contain factual allegations about

misrepresentations.  The Declarations of Plaintiffs Lewis and Klugh contain no statements at all

about misrepresentations.  *See* SAC Att. 2 (DEC-059-68).  Plaintiff Szymanski's Declaration

states only that he relied on Allegheny Ludlum "to tell [him] everything [he] needed to know

concerning [his] retiree health benefits," but sets forth no allegations about misrepresentations or

that he inquired whether his benefits could change after retirement.  *See id.* at DEC-084

(Szymanski Dec. ¶ 9).  ERISA, however, does not impose a "duty of clairvoyance" on

fiduciaries.  *E.g., Mushalla v. Teamsters Local No. 863 Pension Fund*, 300 F.3d 391, 397-98 (3d

Cir. 2002); *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir.

1993); *see also* SAC ¶ 101 (no allegations of misrepresentations).[14]

Because amending an ERISA plan is a non-fiduciary act, *Leuthner*, 454 F.3d at

127, Plaintiffs' allegations that Defendants violated a fiduciary duty by amending the PHMBs are

contrary to law and cannot state a claim.  *E.g.*, SAC ¶¶ 97, 103; *see Skinner*, 188 F.3d at 148

(stating that a fiduciary duty claim "focuses not on the company's failure to continue to provide

lifetime benefits but on its conduct or actions in leading employees to believe that the plans did").

---

[14]  Although Plaintiffs Bittinger, Buday, Kushkowski, Crocker, and Daum attempt to describe
misrepresentations in their Declarations, their fiduciary duty claims fail because they are
time-barred, as set forth above, and/or they cannot allege justifiable reliance, as set forth below.

Moreover, Plaintiffs' allegations that Defendants somehow inadequately disclosed the 2008 and 2012 premium increases in the years leading up to those increases fail to save their claim.  *See* SAC ¶¶ 52, 102.  Those allegations are not factual allegations, but rather are threadbare recitals and legal assertions, attempting to invoke the "serious consideration" line of cases, and are insufficient to state a claim.  The PHMBs were the product of collectively bargained agreements with the Union, not unilateral action by an employer as in the "serious consideration" cases.  To be under "serious consideration," specific proposed changes must be discussed "for purposes of implementation" by senior management "with the authority to implement the change."  *E.g., Mushalla*, 300 F.3d at 399.  No senior management at Defendants had "the authority to implement [any] change" to the PHMBs, and therefore no changes to the PHMBs could be "seriously considered," until an agreement was reached with the Union.  *See, e.g., id.*  When that happened, Allegheny Ludlum promptly advised the plan participants.  *E.g.*, SAC ¶ 53.  Thus, Plaintiffs' assertions fail to state a claim.

### b.      No reliance.

To demonstrate justifiable reliance, each Plaintiff "must have taken some action as a result of the misrepresentation; the mere expectation of a continued benefit is not enough."[15] *Shook*, 625 F.3d at 73.  Plaintiffs have failed to set forth any factual allegations that they each relied on a particular alleged misrepresentation.  Instead, they simply have set forth numerous conclusory assertions and threadbare recitals of the reliance element without any supporting

---

[15]  In the SAC, Plaintiffs twice cite to *Cigna Corp. v. Amara*, 131 S. Ct. 1866 (2011) (cited at SAC ¶¶ 45, 73(d)), in an attempt to claim that they do not need to show reliance.  Plaintiffs' citation to *Amara* is misplaced.  First, *Amara* is limited to its circumstances.  *Id.* at 1871. Second, *Amara* is a pension plan case and depended upon statutorily required pension plan vesting requirements.  *Id.*  Third, as Justice Scalia stated in his concurrence, the discussion in *Amara* about equitable remedies and whether reliance is required is dicta, for which there was "no need and no justification."  *Id.* at 1882-85.  *Amara* does not prevent Plaintiffs from having to show reliance in this welfare plan case.  *E.g., Shook*, 625 F.3d at 73; *see also* Mem. Op., at 9.

factual allegations, *e.g.*, SAC ¶¶ 49 ("Plaintiffs and putative class members detrimentally relied . . . ."), 50-51, 98-100, which are insufficient to state a claim.  *E.g., Iqbal*, 129 S. Ct. at 1949.

Plaintiffs added only one new paragraph in their Second Amended Complaint to attempt to resolve the many deficiencies in their fiduciary duty claim, yet that paragraph falls far short of doing so.  *See* SAC ¶ 101.  Instead, each of the eight subparagraphs of paragraph 101 repeats the same formulaic, non-specific allegation concerning reliance:  "He would have made other arrangements to secure secondary insurance or even worked longer had he known that premium payments would increase so dramatically."  *See* SAC ¶ 101(a), (b), (c), (d), (e), (f), (g), & (h).  That allegation – and the entire Second Amended Complaint – fails to allege any specific misrepresentation that each named Plaintiff allegedly experienced, and it fails to allege how each named Plaintiff justifiably relied on that alleged misrepresentation to his detriment.  *See id.*; *see also Shook*, 625 F.3d at 73.  The allegation amounts to no more than a "mere expectation of a continued benefit," which is insufficient to state a claim.  *E.g., Shook*, 625 F.3d at 73.

The assertions in Plaintiffs' Declarations fail to save their claim.  With respect to Plaintiffs Klugh, Lewis, and Szymanski, none alleges any misrepresentation, and none alleges justifiable reliance to his detriment.  Rather, they each allege that they had a generalized "understanding" that their benefits would not change after retirement, and that they "would" or "may" have made other arrangements if they had known that their benefits could change.  *See* SAC Att. 2 (DEC-060 (Klugh ¶¶ 4, 6), 065 (Lewis ¶¶ 5-6), 083-84 (Szymanski ¶ 9)).

Moreover, Plaintiff Lewis, who retired in 2009, cannot allege that his retirement was "justifiable" reliance because he retired (i) **after** the May 2004 announcement of the facts (a) that Allegheny Ludlum's contribution obligation to retiree health care would be capped; (b) that "no cost" coverage would cease to exist on January 1, 2008; (c) that all retirees would be

required to pay increased premiums; and (d) that the methodology to determine retirees' premium obligation meant that retirees' premiums would continue to go up in the future as health care costs rose; (ii) **after** the October 24, 2007 announcement reaffirming that all of the foregoing would take effect on January 1, 2008; and (iii) **after** all of the foregoing went into effect on January 1, 2008.  *See* Stuligross Dep. 189-95, 212-20, 223-29 & Exs. 24-25, 30-31, 34-35; *see also* SAC ¶¶ 4, 53.  Those inescapable facts negate Plaintiff Lewis' claim.

      With respect to Plaintiffs Buday, Kushkowski, and Daum, whose Declarations include attempts to allege misrepresentations, those Declarations still contain no allegations of reliance based on the misrepresentations alleged.  Indeed, those Declarations contain no allegations about reliance other than the same formulaic, generalized, non-specific allegation set forth in paragraph 101 – that they would have made other arrangements if they had known that their premiums could increase.  *See* SAC Att. 2 (DEC-2080-81 (Buday ¶ 11), 2091 (Kushkowski ¶ 9), 2122 (Daum ¶ 15)).  There are no allegations that causally relate any act of reliance to any alleged misrepresentation.  *See Shook*, 625 F.3d at 73.

      Further, even if Plaintiffs Kushkowski, Daum, Crocker, and Buday had alleged sufficiently specific reliance, that reliance still would not be justifiable because they retired in 2006, 2006, 2006, and 2009, respectively, **after** the May 2004 announcement and, with respect to Plaintiff Buday, **after** the October 24, 2007 announcement and **after** January 1, 2008 when all retirees began paying increased premiums.  *See* Stuligross Dep. 189-95, 212-20, 223-29 & Exs. 24-25, 30-31, 34-35; *see also* SAC ¶¶ 4, 53.  Again, those inescapable facts negate their claims.

      Plaintiffs' final attempt to allege reliance is to claim that they "continued" to detrimentally rely following their retirements.  *See* SAC ¶ 106.  In addition to being a mere legal argument to try to avoid the limitations period, rather than a factual allegation, there is no

23

"continued detrimental reliance" in the Third Circuit.  *See, e.g., Ranke*, 436 F.3d at 203; *Keen*,

486 F. Supp. 2d at 492.  Thus, Plaintiffs have failed to set forth factual allegations showing that

they each justifiably relied on any misrepresentation.  Plaintiffs' fiduciary duty claim fails.

     **C.**     **Plaintiffs' New "TAP Subclass" Fails To Save Any Claim.**

     Finally, Plaintiffs assert allegations about a new "subclass" of individuals who

retired under a TAP program offered by Allegheny Ludlum in connection with a restructuring

from 2004 to 2006.  *See* SAC ¶¶ 2, 71.  It is unclear, however, which claim Plaintiffs intend the

new subclass to support.  In fact and law, the TAP allegations save none of Plaintiffs' claims.

     To the extent Plaintiffs may be claiming the TAP retirees "vested" in their health

benefits upon retirement to try to save Counts I and II, that attempt fails because the TAP retirees

were covered under precisely the same PHMB health plans as non-TAP retirees.  Thus, the same

Continuation of Coverage provision applied equally to TAP retirees, and TAP retirees' health

benefits could equally be terminated or reduced by agreement between Allegheny Ludlum and the

Union.  *See, e.g.*, Ex. 8 hereto (2004 CBA (Doc. 87)), at 230 (specifying that the TAP program

included "retiree health and life insurance **under the PHMB of the Allegheny Ludlum CBA**");

*see also id.* at 227-34; SAC Ex. 4 (specifying that TAP retirees were offered "medical coverage

under a Company-sponsored medical plan for Eligible Retirees and Surviving Spouses," i.e., the

PHMBs); *see also* Ex. 30 hereto, at 6, 12, 15; Ex. 38 hereto (TAP FAQs),[16] at 1-3.  The only

"enhanced" health benefit offered to TAP retirees was to be able to participate in the PHMB plans

"immediately" to the extent they were not already eligible – in other words, the years of service

requirement was modified.  *See, e.g.*, Ex. 30, at 6, 12; Ex. 38 at 1, 3; SAC Ex. 6.  The TAP retirees

did not receive any promise of "free" or "frozen" health benefits, or any other health benefit

---

[16] The TAP FAQs may be considered on Defendants' motion to dismiss because they were referred
to in and attached to Ex. 6 to the SAC and are the other half of the FAQs at Ex. 4 to the SAC.

enhancement beyond the standard PHMB health benefits offered to non-TAP retirees.[17]  *See, e.g.*, Exs. 8, 30, 38; SAC Exs. 4, 6.  Thus, the TAP allegations do not show vested health benefits.

To the extent that Plaintiffs may be claiming that the materials provided to TAP retirees constituted a misrepresentation to try to save Count III, that attempt also fails.  The TAP materials did not promise "free" or "frozen" health benefits "for life."  Rather, the materials specifically advised the TAP retirees they would receive health benefits under the "Company-sponsored medical plan for Eligible Retirees and Surviving Spouses," i.e., the PHMBs, and they quoted the current rates for the coverages offered, just as Allegheny Ludlum provided annual rate sheets to non-TAP retirees.  *See* SAC Ex. 4 (emphasizing that the premium rates quoted were the "**2006** Monthly Premium Rates" (emphasis in original)); *see also* Exs. 30, 38.  The TAP materials were entirely truthful.  The TAP allegations fail to save Count III.

## IV.  CONCLUSION

Plaintiffs have failed to identify any "clear and express language" showing that their retiree health benefits are vested.  To the contrary, the unambiguous plan language establishes that those benefits are not vested.  Plaintiffs' fiduciary duty claim is time-barred, and otherwise fails to state a plausible claim based on factual allegations.  Defendants respectfully submit that Plaintiffs' Second Amended Complaint should be dismissed with prejudice.

---

[17]  Despite Plaintiffs' attempt to obscure the TAP program through selective and misleading citations, *see* SAC ¶ 2, the incentives offered to TAP retirees were numerous **enhanced pension benefits**, **not health benefits**.  *See, e.g.*, SAC Ex. 6; *see also* Ex. 30 hereto (2004 Union Summary), at 6, 12, 15 (describing the details of the TAP program, including the many pension enhancements and the fact that TAP retirees would receive the PHMB health benefits as non-TAP retirees – which did not include any vesting of health benefits).  It was those pension enhancements and the waiving of the years of service requirement for eligibility in the PHMB health plans that served as consideration for the release agreements – not any promise of vested health benefits.  *See id.*

Respectfully submitted,


s/ David J. Kolesar
David L. McClenahan (PA01301)
David J. Kolesar  (PA70439)
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Tel:  412-355-6500
Fax:  412-355-6501
e:  david.mcclenahan@klgates.com
e:  david.kolesar@klgates.com

Dated:  December 10, 2012                    Counsel for Defendants