IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LARRY LEWIS, KURT SZYMANSKI,      )
ROBERT KLUGH, SR., *et al.*       )
                                  )
        Plaintiffs,               )
                                  )
                                  )   Civil Action No.  11-1619
        v.                        )
                                  )
ALLEGHENY LUDLUM                  )
CORPORATION, ALLEGHENY            )
TECHNOLOGIES INCORPORATED,        )
                                  )
        Defendants.               )

**MEMORANDUM OPINION AND ORDER**

CONTI, District Judge.

Pending before the court is a motion to dismiss (ECF No. 158) the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and brief in support (ECF No. 159) filed in the above-captioned case by defendants Allegheny Ludlum Corporation ("Allegheny Ludlum") and Allegheny Technologies Incorporated (collectively "defendants"). Plaintiffs in this putative class action filed a response in opposition (ECF No. 161), defendants filed a reply (ECF No. 163), and plaintiffs filed a sur-reply (ECF No. 167). Plaintiffs filed a notice of supplemental authority. (ECF No. 168.) Upon consideration of the submissions of the parties, the court will GRANT defendants' motion to dismiss with prejudice with respect to all counts in the second amended complaint because there is no plausible breach of contract claim plead in that complaint and any claim for breach of fiduciary duty is barred by the applicable statute of limitations.

**I.  Background**

The present case has twice been the subject of motions to dismiss before this court, and the court on both occasions granted defendants' motions to dismiss without prejudice. (ECF No.

108; Minute Entry dated August 29, 2012). Plaintiffs filed a four-count second amended complaint on behalf of themselves and similarly situated individuals against defendants, which is the subject of the instant motion to dismiss. (ECF No. 143.)

The putative plaintiffs' class includes eight named plaintiffs, several thousand former union employees of Allegheny Ludlum, and their spouses, surviving spouses, or dependents. The putative class members assert the rights of retirees who retired at various dates under a series of collective bargaining agreements ("CBAs") negotiated between the United Steelworkers ("USW") and defendants,. (Id. ¶¶ 1-2.)  Plaintiffs allege that the CBAs made them eligible for health and other benefits upon retirement, as set forth in the Program of Hospital and Medical-Benefits/Summary Plan Descriptions ("SPDs") periodically published by defendants. (Id. ¶ 1.) Plaintiffs allege a subclass of 650 former employees who retired under a program known as the Allegheny Ludlum Transition Assistance Program ("TAP program") for USW-represented employees. (Id. ¶ 2.) The TAP program was offered to employees who retired in 2004, 2005, and 2006 according to defendants' workplace restructuring, and was allegedly negotiated to provide "improved retirement benefits" for those eligible employees willing to take voluntary early retirement. (Id.)

The multi-year CBAs, which are attached to the second amended complaint, each provide health insurance benefits for active and retired employees and incorporate by reference the health benefit plan, known as the "Program of Hospital-Medical Benefits for Eligible Pensioners and Surviving Spouses of Allegheny Ludlum Corporation" ("PHMB"). (Id. ¶¶ 26-27.) The benefits provided pursuant to the PHMB were allegedly provided at no cost to numerous retirees until January 1, 2008, at which time a $40.00 (individual) and $80.00 (family) per month premium was imposed upon pre-Medicare eligible retirees; and a $20.00 (individual) and $40.00 (family) per month premium was imposed upon Medicare eligible retirees. (Id. ¶ 31.) These premiums increased by over 300% and 500% respectively beginning January 1, 2012. (Id.) Plaintiffs allege

that the previous CBAs vested no-cost lifetime health benefits in retired union employees of Allegheny Ludlum, and did not grant defendants the right to modify, amend or terminate retiree health benefits. (Id. ¶ 33.) Plaintiffs allege that the retirees never gave their consent to the increased premiums. (Id. ¶ 44.)

The second amended complaint points to language from past SPDs with respect to eligibility; costs of benefits; continuation of coverage; Medicare coverage; and termination of hospital and physicians' services coverage, which plaintiffs allege create an ambiguity in the contract language between the continuation of coverage clause in the insurance agreement and the SPD. (Id. ¶¶ 34-45.) Plaintiffs point to communications from defendants to retirees indicating that defendants would pay the full cost of basic health insurance coverage, along with similar representations made in other documents produced by defendants and the USW. (Id. ¶¶ 49, 58-59.) Plaintiffs allege that, as a result of the misrepresentations and inconsistencies, they were unable to make informed decisions about their financial futures and retirements. (Id.¶ 50.) Each named plaintiff and many putative class members submitted declarations outlining, inter alia, how they relied upon these alleged misrepresentations by Allegheny Ludlum. (ECF Nos. 144-155.) By letters dated October 24, 2007, and announcements made in July or August 2011, defendants allegedly expressed their intention to raise the premiums for health insurance benefits available to plaintiffs and other retirees. (ECF No. 143 ¶¶ 53-57.)

Plaintiffs allege that (a) the decision to increase retired union members' premium payments was in violation of one or more of the former CBAs—a breach of contract claim brought under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, (count one) and § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (count two); (b) Allegheny Ludlum breached its fiduciary duty under ERISA to plaintiffs, see 29 U.S.C. §§ 1104, 1132(a)(3), when it misled them into believing their retiree medical benefits could not and would not be changed for the remainder of their lives

following retirement (count three); and (c) declaratory relief pursuant to the Declaratory

Judgment Act, 28 U.S.C. § 2201 and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (count four).

## II.  Motion to Dismiss Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In

deciding a Rule 12(b)(6) motion to dismiss, the court is not opining on whether the plaintiff will

be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts

as true all well-pled factual allegations in the complaint and views them in a light most favorable

to the plaintiff.  U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  While a

complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss,

a complaint must provide more than labels and conclusions.  Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not

do." Id.  (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  "Factual allegations must be

enough to raise a right to relief above the speculative level" and "sufficient to state a claim for

relief that is plausible on its face." Id.  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550

U.S. at 556).

> The plausibility standard is not akin to a "probability requirement,"
> but it asks for more than a sheer possibility that a defendant has
> acted unlawfully.  Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"

Id. (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

Two working principles underlie Twombly. Id. at 678-79.  First, with respect to mere

conclusory statements, a court need not accept as true all the allegations contained in a

complaint.  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555.)  Second, to survive a motion to dismiss, a claim must state a plausible claim for relief.  Id. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. (quoting FED. R. CIV. P. 8(a)(2)).  A court considering a motion to dismiss may begin by identifying allegations that are not entitled to the assumption of truth because they are mere conclusions.  Id.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id.

Generally, if "matters outside the pleadings are presented to and not excluded by the court" a motion to dismiss must be treated as a motion for summary judgment.  FED. R. CIV. P. 12(d).  There are exceptions to this general rule.  First, a court is permitted to consider documents "integral to or explicitly relied upon in the complaint" in ruling on a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them."  Id.  Second, the court may rely on "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Third, the court may rely on public records (if undisputed) such as criminal case dispositions, letter decisions of government agencies and published reports of administrative bodies.  Id. at 1197.  The rationale behind these

exceptions is that the plaintiff is already on notice of the documents in these situations, and as such is not prejudiced by their consideration on a motion to dismiss.  See U.S. Land Res. v. JDI Realty, LLC, Civil Action No. 08-5162, 2009 WL 2488316, at *4 (D.N.J. Aug. 12, 2009).

## III.  Discussion

Defendants move to dismiss the second amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants argue with respect to the breach of contract claims in counts one and two that the retirees' medical benefits were not vested as a matter of law and, therefore, could be freely terminated at the discretion of Allegheny Ludlum and the USW.   With respect to the breach of fiduciary duty claim in count three, defendants argue that plaintiffs' claims are barred by the applicable statute of limitations.  In the alternative, defendants argue that count three should be dismissed for failure to state a sufficiently plausible claim for relief under the federal pleading standards. With respect to count four, defendants argue that no declaratory relief is available because plaintiffs' other claims fail as a matter of law.

### A.      Counts One and Two—Breach of Contract Claims

With respect to the breach of contract claims under the LMRA and the ERISA (counts one and two), the parties dispute the significance of the continuation of coverage provision in the CBAs which provides:

> Any pensioner or individual receiving a Surviving Spouse's benefit who shall become covered by the Plan established by this Agreement shall not have such coverage terminated or reduced (except as provided in the Plan) so long as the individual remains retired from the Company or receives a Surviving Spouse's benefit, notwithstanding the expiration of this Agreement, except as the Company and the Union may agree otherwise.

(E.g., Ex. 11, Program of Hospital-Medical Benefits, Jan. 1, 1981 (ECF No. 90) at 53-54

(emphasis added).) At issue between the parties is whether the language of the continuation of coverage clause creates a vested right to no-cost health insurance for as long as retirees and their dependents are eligible for benefits.

Defendants urge the court to find that the quoted language is "clearly unambiguous" with respect to vesting and that Allegheny Ludlum and the USW expressly reserved their right to modify retirees' benefits. (ECF No. 159 at 4.) If the language is unambiguous, defendants argue that extrinsic evidence is unnecessary and counts one and two should be dismissed as a matter of law. (Id.) In response, plaintiffs argue that the record reveals at least three interpretations of the language at issue: (a) Allegheny Ludlum's interpretation that the benefits are not vested; (b) the USW's interpretation that the benefits are vested, but subject to modification; and (c) the plaintiffs' interpretation that the language creates lifetime vested benefits. (ECF No. 161 at 17-24.) Plaintiffs rely upon extrinsic evidence in formulating these interpretations and argue that Allegheny Ludlum's interpretation creates an illusory promise and the USW's interpretation allows the union to bargain away vested rights without the retirees' consent. (Id.) Given the multiple interpretations, plaintiffs insist that the language creates an ambiguity that allows their breach of contract claims to survive.

Construction of collective bargaining agreements is typically a question of law, and because the ERISA preempts state contract law principles, the court applies federal common law. Baldwin v. Univ. Pittsburgh Med. Ctr., 636 F.3d 69, 75 (3d Cir. 2011). When the terms of a collective bargaining agreement are clear and unambiguous, a court must determine their meaning as a matter of law, without reference to extrinsic evidence. See, e.g., In re Lucent Death Benefits ERISA Litig., 541 F.3d 250, 254-55 (3d Cir. 2008).

There are two types of employee benefit plans under the ERISA: pension plans and welfare plans. Employee welfare plans provide "medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment. . . ." 29 U.S.C. §

1002(1). Pension plans, on the other hand, either (a) provide retirement income to employees, or (b) result in a deferral of income by employees for periods extending to the termination of covered employment or beyond. 29 U.S.C. § 1002(2)(A). The plan involved in this litigation is an employee welfare plan, which provides medical benefits to retirees.

Congress excluded welfare plans from the vesting requirements it imposed on pension plans. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Skinner Engine Co., 188 F.3d 130, 138 (3d Cir. 1999). The distinction in vesting requirements was intentional. Id. ("Vesting requirements were not established for employee welfare plans because Congress determined that '[t]o require the vesting of those ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income.'" (quoting Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1160 (3d Cir. 1990))).

Because of this distinction, employers are "generally free for any reason at any time, to adopt, modify or terminate welfare plans." Id. (citing Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995)). The Court of Appeals for the Third Circuit explained in Skinner:

> [Employers] may agree of course to relinquish their right to unilaterally terminate those benefits and provide for lifetime vesting. This court has made clear that the "plan participant bears the burden of proving, by a preponderance of the evidence, that the employer intended the welfare benefits to be vested."
>
> In applying these standards, it must be remembered that to vest benefits is to render them forever unalterable. Because vesting of welfare plan benefits constitutes an extra-ERISA commitment, an employer's commitment to vest such benefits is not to be inferred lightly and must be stated in clear and express language.

188 F.3d at 138-39 (internal citations omitted). The court of appeals subsequently acknowledged that the standard in Skinner amounts to a presumption against vesting in cases involving welfare benefit plans. Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health and Welfare Plan, 298 F.3d 191, 196 (3d Cir. 2002).

The court has twice concluded that the language in the continuation of coverage clause does not satisfy the Skinner standard for finding that vested ERISA benefits exist. Plaintiffs now argue that the language is at best ambiguous with respect to the vesting of benefits and attempt to present extrinsic evidence in an effort to resolve the ambiguity.  Plaintiffs cite Baldwin v. University of Pittsburgh Medical Center, 636 F.3d 69, 76 (3d Cir. 2011), where the Court of Appeals for the Third Circuit held that in determining whether contract terms are clear or ambiguous, "a court must consider 'the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning.'" Id.  (quoting Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980)). The court in Baldwin, however, made clear that "where the words of the contract clearly manifest the parties' intent, a court need not 'resort to extrinsic aids or evidence.'"  Id. (quoting Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 587 (3d Cir. 2009)). "Extrinsic evidence, however, may *not* be used to create an ambiguity where none exists . . . there must be either contractual language on which to hang the label of ambiguous or some yawning void . . . that cries out for an implied term. Extrinsic evidence should not be used to add terms to a contract that is plausibly complete without them." Skinner, 188 F.3d at 145-46 (internal quotations and citations omitted). Plaintiffs fail to present any language from the contract itself— i.e. the plan documents—that creates an ambiguity by contradicting the plain meaning of the continuation of coverage provision.[1] Extrinsic evidence is, therefore, not necessary at this stage. Id. Even if the court were to consider plaintiffs' proffered extrinsic evidence, however, the extrinsic evidence still fails to meet the Skinner standard, as discussed below.

In  Skinner, the Court of Appeals cautioned that

---

[1] Paragraph 45 of the second amended complaint alleges that there are "internal inconsistencies" between the SPD and the continuation of coverage provision, which plaintiffs allege amounts to an ambiguity requiring the court to resort to extrinsic evidence. (ECF No. 143 ¶ 45.) Although plaintiffs cite to other provisions from the SPD, (Id. ¶¶ 46-47), those provisions do not contradict the continuation of coverage language, and plaintiffs do not address this argument in their briefing. To the extent that these allegations amount to unsupported legal conclusions, they are not sufficient to survive a motion to dismiss. Iqbal, 556 U.S. at 678.

> [t]o determine whether a contract is ambiguous, a court may not merely consider
> whether the language is clear from its point of view. . . . Rather, a court must
> "hear the proffer of the parties and determine if there [are] objective indicia that,
> from the linguistic reference point of the parties, the terms of the contract are
> susceptible of different meanings." . . . Reference must be made to the "contract
> language, the meanings suggested by counsel, and the extrinsic evidence offered
> in support of each interpretation.

Id. at 142 (quoting Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989

F.2d 132, 135 (3d Cir. 1993)). As discussed above, plaintiffs suggest three interpretations of the

relevant portion of the continuation of coverage clause (those offered by Allegheny Ludlum, the

USW, and plaintiffs) by pointing to several pieces of extrinsic evidence, which they argue

renders defendants' interpretation unreasonable.[2]

Plaintiffs characterize Allegheny Ludlum's interpretation of the continuation of coverage

provision as being that the provision does not provide vested welfare benefits, and applies to

current rather than future retirees. Plaintiffs do not support this interpretation with anything more

than a citation to the brief in support of defendants' motion to dismiss. Plaintiffs argue,

nevertheless, that Allegheny Ludlum's interpretation would be contrary to basic principles of

contract law in that it creates an unenforceable illusory promise.

This argument is without merit because the Court of Appeals for the Third Circuit has

explicitly upheld ERISA plan documents containing nearly identical provisions without finding

them illusory. The language at issue in In re Unisys Corp. Retiree Medical Benefit "ERISA"

Litig., 58 F.3d 896 (3d Cir. 1995) ("Unisys I"), involved "summary plan descriptions that used

the terms 'lifetime' or 'for life' to describe the duration of medical benefits, while at the same

time reserving the employer's right to modify or terminate at 'any time' and 'for any reason.'"

---

[2] It should be noted that an ambiguity in contract language only exits "when it is 'subject to **reasonable alternative interpretations**.'" Skinner, 188 F.3d at 142 (citing Taylor v. Continental Grp. Change in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir. 1991)) (emphasis added). Plaintiffs' argument in opposition attempts to show that all interpretations of the continuation of coverage clause, except their own, are unreasonable. If that were the case, the court would not have to resort to extrinsic evidence, because, by plaintiffs' own argument, the contract language is not ambiguous. Although the court disagrees with plaintiffs' proffered interpretation because it attempts to read terms into the contract, the court will nevertheless address plaintiffs' arguments based upon extrinsic evidence.  See id.

Id. at 898. The court of appeals concluded that there was no inconsistency between promises of "lifetime" benefits and the express reservation of rights permitting the employer to "change or end" the plans "at any time." Id. at 900-01. In Unisys I, the employer possessed a unilateral right to change or end the plans, even without agreement by a union, as in the present case.

This court rejected similar arguments to that advanced by plaintiffs in light of Skinner: "the presence of a duration clause [in welfare benefit plan documents] does not render the promise of making payments in the future illusory." Local Lodge 470 of Dist. 161 v. PPG Indus., Inc., No. Civ. A. 01-2110, 2006 WL 901927, at *14 (W.D. Pa. Mar. 31, 2006). As defendants point out, the illusory promise argument is a vestige of the rejected holding by the Court of Appeals for the Sixth Circuit in International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. Yard-Man, Inc., 716 F.2d 1476 (6th Cir. 1983), cert denied, 465 U.S. 1007 (1984). In Yard Man, the court adopted an inference in favor of vesting that allows courts to presume that an employer's future termination of certain welfare benefits "rendered the promise to pay [those benefits] illusory to those retirees not yet eligible for [the benefits]." Local Lodge 470, 2006 WL 901927 at *14. The court in Local Lodge 470, however, found that the Yard-Man presumption allows courts to presume that those future rights would vest, which does not comport with the precedential case law of the Court of Appeals for the Third Circuit. Smathers, 298 F.3d at 196. Following plaintiffs' argument to conclusion would render invalid the very purpose underlying the decision in Skinner, which is that "[e]mployers are 'generally free . . . for any reason at any time, to adopt, modify, or terminate welfare plans.'" Skinner, 188 F.3d at 138 (quoting Shoonejongen, 514 U.S. at 78). Plaintiffs' illusory promise argument attempts to put the cart before the horse by presuming that the benefits at issue in the present case are vested—which could lead to an unenforceable illusory promise—without supplying sufficient extrinsic evidence to support the conclusion that they are vested.

11

Plaintiffs' second argument in favor of finding that the retirees' benefits were intended to be vested fails for essentially the same reasons discussed above. Once again plaintiffs put the cart before the horse by arguing that the union, in agreement with Allegheny Ludlum, may not bargain away vested benefits without the retirees' consent. (ECF No. 161 at 20.) As discussed above, this interpretation requires the court to presume that the benefits are vested (which is not permitted under the precedential case law decided by the Court of Appeals for the Third Circuit), and raises the question whether the union could bargain away those presumed vested rights without the retirees' consent. Plaintiffs' proffered evidence that the USW interprets the continuation of coverage clause to mean that benefits are vested subject to modification is not, however, sufficient to overcome the <u>Skinner</u> presumption against vesting. Without first satisfying the <u>Skinner</u> test, it is not necessary to determine whether non-vested benefits can only be modified with retirees' consent.

Plaintiffs point to deposition testimony by USW representative Joseph Stuligross ("Stuligross"), that they argue supports the interpretation that the USW believed that the benefits were vested, but subject to modification. (ECF No. 143 ¶¶ 41-44.) The second amended complaint refers to several of Stuligross' statements about the continuation of coverage provision:

- "[T]hat language would not defeat a vested benefit in the Sixth Circuit." (ECF No. 143-15 at 62.)

- "I mean, the objection in the Third Circuit is not that the benefits don't continue beyond the expiration of the agreement. They do." (<u>Id.</u> at 63.)

- "I mean, certainly the benefits continue beyond the expiration of the agreement, so to that extent they are vested, **but it doesn't mean that they can't be changed during the remainder of the retiree's lifetime**." (<u>Id.</u>) (emphasis added to reflect language not quoted by plaintiffs).

- "Again, they are vested subject to the continuation of coverage clause." (Id. at 76.)

- "Again, the benefits are vested, if you will, subject to the continuation of coverage clause." (Id. at 92.)

Although plaintiffs selectively quote Stuligross in an effort to support a finding that the USW intended the benefits to be vested, his statements reflect, at most, a qualified use of the word "vested":

> Q.     When you referred to the benefits in this case as vested in any way, did you ever mean to suggest that you believed that those benefits were vested such that they could never be changed even by an agreement between Allegheny Ludlum and the union?
>
> A.     The union does not hold that view; right.

(ECF No. 143-16 at 235.) Defendants' brief also notes portions of Stuligross' testimony that "makes clear that [retirees'] coverage can be terminated or reduced where the company and the union agree." (Id. at 175.) Stuligross' testimony in no way contradicts the court's reading of the continuation of coverage language insofar as Allegheny Ludlum and the USW were able to alter subsequently the agreement "during the remainder of the retiree's lifetime." Although Stuligross acknowledged that the benefits were intended to continue past the expiration of the agreement (a proposition not challenged by defendants), he never used the word "vested" without qualifying it, reflecting his understanding that "vested" is a legal term of art that carries a very specific meaning in this context. Because Stuligross' explanation is entirely consistent with the court's interpretation of the continuation of coverage provision insofar as the retirees' benefits were to continue unchanged until Allegheny Ludlum and the USW agreed to modify or terminate them.

As an additional matter, the presence of the continuation of coverage language in the PHMBs supports defendants' position that the rights were never intended to vest, since vested benefits are not subject to modification without the retirees' consent. Allied Chem. and Alkali

Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div., 404 U.S. 157,

181 n.20 (1971). Taken together, the proffered testimony[3] fails to meet plaintiffs' burden of

pleading a plausible claim based upon the parties' intention that the retirees' welfare benefits

vested. Skinner, 188 F.3d at 138-39.

Plaintiffs' final argument (which is their interpretation of the language) is that the clause

"except as the Company and the Union may agree otherwise" only applies to individuals who

have not yet retired.  In other words, the continuation of coverage provision allows Allegheny

Ludlum and the USW to divest the welfare benefits from people who have not yet retired, but

does not apply to individuals who have already retired. Plaintiffs advanced this argument

previously, and the court already rejected it; moreover, they still do not provide a reasonable

textual basis for their interpretation of the contractual terms.[4]   Plaintiffs did not alert the court to

any indicia "from the linguistic reference point of the parties" that their proffered interpretation

is correct.  To reach the conclusion sought by plaintiffs, this court would have to ignore the

phrase "except as the Company and the Union may agree otherwise."  The court cannot do so.

See Kitterman v. Coventry Health Care of Iowa, Inc., 632 F.3d 445, 459 (8th Cir. 2011)

---

[3] Plaintiffs include in the second amended complaint language from an article in a publication called *Trial* authored by outside counsel for the USW. Although not addressed in plaintiffs' brief, they appear to argue that this extrinsic evidence is sufficient to show that the USW intended the retirees' benefits to vest. The article does make reference to plan language similar to that at issue in the present case; however, it cites two decisions: United Steelworkers of America, AFL-CIO-CLC v. Connors Steel Co., 855 F.2d 1499 (11th Cir. 1988), and Weimer v. Kurz-Kasch, 773 F.2d 669 (6th Cir. 1985), both of which explicitly relied upon Yard-Man and its attendant presumption in favor of vesting. In light of the Court of Appeals for the Third Circuit's rejection of the Yard-Man presumption, this extrinsic evidence is not sufficient to meet the Skinner standard.

    Plaintiffs filed a notice of supplemental authority (ECF No. 168), which they argue supports their argument. The decision attached, however, actually cuts against plaintiffs' argument under Skinner, since the continuation of coverage language at issue in that decision, Grove v. Johnson Controls, Inc., Civil No. 12-CV-2622, 2013 WL 3049144, at *9 (M.D. Pa. June 17, 2013), expressly provided that benefits would last "until [the retirees'] death." The court in Grove acknowledged that the reservation of rights clause, which merely contemplated termination of coverage, did not actually provide a mechanism for termination. The language in the present case is easily distinguishable in that it does not provide for benefits to last until death, and the reservation of rights provision expressly provides a mechanism for termination or modification. The supplemental authority is not persuasive.

[4] The court already concluded the continuation of coverage provision, upon fair reading and without consideration of extrinsic evidence, applies explicitly *only to* retirees.  The language is backward-looking, and presumes that the individuals to which it is referring are already retired.  For example, the provision applies to "pensioners," rather than employees.  It provides coverage will continue "so long as the individual *remains* retired."  Plaintiffs still do not confront the entire text of the continuation of coverage provision in arguing that an ambiguity exists.

("[W]hen interpreting the terms of the [ERISA] plan, we cannot ignore provisions or rewrite the plan documents to conform with what the [beneficiary] actually read. . . .   We must consider the documents as an 'integrated whole,' and 'give effect' to 'all parts of the contract.'").   The court cannot conjure ambiguity where none exists.   For the reasons stated above, plaintiffs do not sufficiently plead a breach of contract claim under the LMRA or ERISA.   They have not shown a plausibility of entitlement to relief, and counts one and two of the second amended complaint must be dismissed.

### B.   TAP Subclass

Plaintiffs attempt to salvage their breach of contract claims by alleging a new subclass of plaintiffs who retired pursuant to the TAP program. Plaintiffs argue that the employees who retired pursuant to the TAP program (the "TAP retirees") were subject to a new and different contract, entitled the Allegheny Ludlum General Waiver and Release ( "GWR"), that refers to, but is not controlled by, the CBAs. (ECF No. 143-3.) In support of this argument, plaintiffs point to the integration clause of the GWR, which provides that "no prior agreement, whether oral or written, shall have any effect on the terms and provisions of this Release Agreement; and all prior agreements, whether written or oral, are expressly superseded and/or revoked by this agreement." (ECF No. 143-3 at 5.) Plaintiffs conclude, therefore, that the GWR was a contract with the TAP retirees separate and apart from the CBAs and PHMBs, which included the continuation of coverage language permitting modification.

Defendants maintain that the GWR necessarily incorporated the terms of the PHMB, because it merely provided that TAP retirees would be "immediate[ly] eligib[le] for retiree health and life insurance." (ECF No. 143-7 (letter to employees about TAP program)). None of the documents attached to the second amended complaint indicate that a different health benefits plan was created for TAP retirees; rather, the informational packet attached to the GWR (which was expressly incorporated into the terms of the GWR) included a "summary of retiree health

insurance plan provisions and supporting information." (ECF No. 143-3 at 3; ECF No. 143-7 at 2.) Plaintiffs did not attach the "summary of retiree health insurance plan provisions" to the second amended complaint, but defendants point to the "Frequently Asked Questions" sheet accompanying the GWR, which indicates that "If you elect retirement under TAP, you have the option of: (1) Electing medical coverage under a Company-sponsored medical plan for Eligible Retirees and Surviving Spouses." (ECF No. 143-5 at 2.) Since the PHMB is titled "Program of Hospital-Medical Benefits for Eligible Pensioners and Surviving Spouses of Allegheny Ludlum Corporation," it is clear that the GWR refers to the PHMB. Plaintiffs proffer no evidence or allegation to the contrary. Under those circumstances, the GWR "incorporate[s] . . . by reference" the language of the PHMB, and the rights of the TAP retirees do not differ from those of the other plaintiffs, meaning their rights are not vested under <u>Skinner</u>, as discussed above.

Even if the court were to find that the GWR did not incorporate the PHMB and was the only agreement between Allegheny Ludlum and the TAP retirees, plaintiffs still fail to meet their pleading burden pursuant to the test set forth in <u>Skinner</u>. Plaintiffs argue that the absence of any language with respect to vesting is sufficient for the court to infer that any health benefits conferred by the GWR are vested. This argument is incorrect for three reasons. First, if the court were to conclude that the GWR is the only contract between Allegheny Ludlum and the TAP retirees, the GWR is silent about the terms by which health benefits are available to those retirees. The court could thus infer that no health benefits were to be provided under the GWR. Second, <u>Skinner</u> precludes the court from presuming that benefits vested. <u>Skinner</u>, 188 F3d at 139. Plaintiffs fail to point to any "clear and express language" that would be sufficient for the court to infer that the no-cost benefits were intended to vest for life. Third, plaintiffs include a footnote in their brief indicating that "[t]hese express, written documentary provisions alleged by the TAP Retirees satisfy the Court's request for 'extrinsic evidence, sufficiently linked to linguistic reference points in the plan documents, tending to show they have plausible LMRA

16

and ERISA breach of contract claims.'" (ECF No. 161 at 6 n.4.) The "written documentary provisions" to which the footnote refers is plaintiffs' assertion that "[n]o actual TAP document contains a reservation of rights clause, a [continuation of coverage] or any provision indicating that the $0 premium would change in the future." (Id. at 6.) Plaintiffs do not point to "express, written documentary provisions;" instead, they point to the absence of such language as evidence of the intent to vest. To follow plaintiffs' argument, the court would need to presume that the rights are vested. Plaintiffs' are not able to meet their burden under Skinner. Plaintiffs' breach of contract claims with respect to the TAP retirees must be dismissed.

### C.    Count Three

Count three of the second amended complaint asserts a breach of fiduciary duty pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). With respect to a breach of fiduciary duty claim under the ERISA, "a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary;[5] (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." Romero v. Allstate Corp., 404 F.3d 212, 226 (3d Cir. 2005). For purposes of the present motion, defendants challenge the sufficiency of plaintiffs' allegations with respect to the misrepresentation and detrimental reliance prongs of the breach of fiduciary duty claim. Defendants argue in the alternative that plaintiffs' breach of fiduciary duty claim is barred by ERISA's statute of limitations.

### 1.    Sufficiency of Pleadings

---

[5] Defendants do not explicitly challenge this element of the breach of fiduciary duty test. They, however, make the argument that amending a plan is not an ERISA fiduciary action. (ECF No. 159 at 14.) This argument has been rejected on the ground that "'ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." Grove, 2013 WL 3049144, at *9. To the extent that plaintiffs pleaded that defendants are fiduciaries of the benefit plan (ECF No. 143 ¶¶31-32), and to the extent that defendants make no explicit argument to the contrary, the court will accept those allegations as true for purposes of defendants' motion to dismiss the second amended complaint.

Defendants argue that plaintiffs fail to state a claim for breach of fiduciary duty because they did not allege facts showing that defendants misrepresented or inadequately disclosed information about the retirees' benefits; and did not allege adequately that plaintiffs' relied to their detriment on those misrepresentations. The court previously dismissed plaintiffs' breach of fiduciary duty claim for failure to plead adequately detrimental reliance. (ECF No. 108 at 8-9.)

### a.   Misrepresentation/Inadequate Disclosure

Defendants first challenge plaintiffs' allegations with respect to the misrepresentation prong of the breach of fiduciary duty claim. Romero, 404 F.3d at 226. "'A misleading statement or omission by a fiduciary' is material if 'there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision,' . . . or 'a harmful decision regarding benefits.'" In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 228 (3d Cir. 2009) ("Unisys IV") (internal citations omitted). In determining whether an alleged misrepresentation or inadequate disclosure is substantially likely to mislead a reasonable employee, courts examine "whether the 'fiduciary, as an objective matter, knew or should have known that a beneficiary would be confused' by the statement or omission." Id. at 228-29 (quoting Burstein v. Ret. Account Plan for Employees of Allegheny Health, Educ. & Research Found., 334 F.3d 365, 386 n.31 (3d Cir. 2003)).

Defendants are correct in asserting that several of the documents relied upon by plaintiffs are not sufficient to be a material misrepresentation insofar as those documents were produced by the USW, not defendants. Plaintiffs point to the May 2001 Summary proposed agreement between USW and Allegheny Ludlum, (ECF No. 143-19); the 2004 Summary, (ECF No. 143-20); and the USW website (ECF No. 143-21). None of those documents can be considered an affirmative misrepresentation by defendants. See Shook v. Avaya, 625 F.3d 69, 73 (3d Cir. 2010) (an ERISA breach of fiduciary duty claim requires plaintiff to establish, *inter alia*, that "the **defendant** made affirmative misrepresentations or failed to adequately inform plan participants

18

and beneficiaries" (emphasis added)). Plaintiffs do not appear to contest that these USW documents cannot, as a matter of law, constitute misrepresentations by defendants. (ECF No. 143 ¶ 58) (identifying the documents as "Union Summar[ies]" and the "Union website").

The remaining documents relied upon by plaintiffs are: (1) a March 2002 letter from Allegheny Ludlum to "Eligible Allegheny Ludlum <u>Hourly</u> Retirees and Surviving Spouses." (ECF No. 143-18); and (2) a flyer allegedly received by putative class member Glenn Russell in approximately 1997. (ECF No. 143-22.) The March 2002 letter states, in relevant part, "[t]he Company pays the full cost of Basic coverage and requires you to pay only half the cost of Major Medical. Each year, we announce new monthly premium rates for retiree medical coverage. Premiums are calculated based on the prior year's actual claims experience along with other influencing factors." (ECF No. 143-18 at 2.)[6] The flyer, addressed to "RETIREES AND SURVIVING SPOUSES IN <u>WESTERN PENNSYLVANIA</u>," indicates that "Allegheny Ludlum offers three MEDICARE HMOs to our Western Pennsylvania retirees, at NO COST to you." (ECF No. 143-22 at 2.) Defendants argue that these documents—at the time they were issued— were completely truthful, and plaintiffs cannot premise their misrepresentation allegations on statements that were true at the time they were made.

Plaintiffs, for their part, argue that courts have found misrepresentations in situations where a statement was initially true, but was rendered false in light of later events. (ECF No. 167 at 2-3.) Plaintiffs cite several nonbinding court decisions in support of their argument. In <u>Varnum v. Nu-Car Carriers, Inc.</u>, 804 F.2d 638 (11th Cir. 1986), the court acknowledged that statements by a representative of the defendant company "did not become inaccurate until the change in the collective bargaining agreement on or about June 26, 1983." <u>Id.</u> at 642 (Hoffman, J., concurring specially). Plaintiffs' reliance upon the concurring opinion in <u>Varnum</u> is misplaced for a number

---

[6] In the second amended complaint, plaintiffs only quote the first sentence referenced above, and omit the relevant language indicating that premiums are subject to change on a year-to-year basis. (ECF No. 143 ¶ 49.)

of reasons. First, the decision in <u>Varnum</u> was premised upon resolution of a question of state law pursuant to a state law claim of fraudulent misrepresentation. <u>Id.</u> at 639 ("In November 1984, [the plaintiff] filed a complaint against [the defendant] in Florida state court alleging that [the defendant] had fraudulently misrepresented to him the conditions of employment in order to induce him to accept employment."). The court explicitly held that federal law (§ 301 of the Labor-Management Relations Act and the National Labor Relations Act) did not preempt the plaintiff's state-law claims; and the ERISA was not at issue in the case at all. <u>Id.</u> at 639-41. Therefore, the <u>Varnum</u> decision is distinguishable because the court was not applying the ERISA breach of fiduciary duty standard in determining whether defendants made an affirmative misrepresentation in the present case. Second, to the extent that the reasoning in <u>Varnum</u> is persuasive, the court relied upon evidence indicating that the defendant's representative knew the statements to be false. Plaintiffs in the present case offer no allegations which would allow the court to infer reasonably that those who authored the two letters knew that retirees' benefits were going to change.

Plaintiffs cite two district court decisions in support of their argument. Plaintiffs cite <u>Fugman v. Aprogenix, Inc.</u>, 961 F. Supp. 1190 (N.D. Ill. 1997), which relates to misrepresentations made in the context of a securities fraud case, not an ERISA claim. The court in <u>Fugman</u>, in attempting to determine when a misrepresentation was made, acknowledged that information provided by certain parties "might have grown stale" since it was initially disclosed. <u>Id.</u> at 1199. Plaintiffs also cite <u>Peachin v. Aetna Life Ins. Co.</u>, No. 92 C 2739, 1994 WL 61793 (N.D. Ill. Feb. 24, 1993), which did involve ERISA claims.  <u>Peachin</u> involved a situation where statements made by a fiduciary were rendered untrue by subsequent events, thus giving rise to a duty to prevent the statements from becoming misleading. <u>Id.</u> at *18-32. As discussed herein, however, the March 2002 letter and the flyer remained accurate even after the changes to retirees' benefits. No duty like that required in <u>Peachin</u> arose in the present case, and the

information remained truthful, unlike in <u>Fugman</u>.  Because the decisions cited by plaintiffs are factually distinguishable from the facts of the present case, the court must determine whether the documents identified by plaintiffs are sufficient to constitute a material misrepresentation pursuant to the standard set forth in <u>Unisys IV</u>.

The March 2002 letter (Exhibit 16 to the second amended complaint), as discussed above, contains significant language that was not quoted by plaintiffs in the body of the second amended complaint. Specifically, the letter points out that "[e]ach year, we announce monthly premium rates for retiree medical coverage" and that those "[p]remiums are calculated based on the prior year's actual claims experience along with other influencing factors." (ECF No. 143-18 at 2.) The letter does not indicate that premiums would never increase and does not guarantee that Allegheny Ludlum would pay "the full cost of Basic coverage" in perpetuity. Instead, the letter qualifies that statement by indicating that premiums are subject to change "[e]ach year." <u>See</u> <u>Unisys IV</u>, 579 F.3d at 231 (affirming district court's finding of misrepresentation where "[i]n essence, by failing to qualify its statements, Unisys placed a period where it should have placed a comma in the course of explaining retiree medical benefits to these plaintiffs"). Here, defendants qualified their statement by indicating that new premiums are announced each year. The court cannot infer a substantial likelihood that a reasonable employee reading the language in this letter would likely be misled and make an inadequately informed retirement decision. <u>Id.</u> at 228.

The allegations of the second amended complaint indicate that only one putative class member—Glenn Russell—actually received the flyer presented by plaintiffs as Exhibit 20 to the second amended complaint. To the extent that no named plaintiff is alleged to have received the flyer, it cannot form the basis of a misrepresentation. It is also unclear whether the flyer actually relates to the benefits at issue in the present case, since it seems to be limited to "MEDICARE HMOs" available to those who are "eligible." The flyer also makes reference to "cancel[ling]

your Allegheny Ludlum coverage," which further indicates that the benefits discussed in the flyer are not those at issue in the present case. To the extent that the flyer is advertising a benefit option that was not applicable to plaintiffs, it cannot form the basis of a misrepresentation. Without more context, the court cannot reasonably infer that the named plaintiffs (none of whom are alleged to have received the flyer) were misled by the statements contained therein. As a final matter, it is important to remember that the continuation of coverage provision in the SPD explicitly provides that retiree benefits are subject to change pursuant to agreement by Allegheny Ludlum and the USW. The Court of Appeals for the Third Circuit acknowledged that "[a]ny determination of whether [a defendant] conveyed a message that was 'materially misleading' . . . cannot simply ignore the existence of the SPD." In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig., 242 F.3d 497, 508 (3d Cir. 2001) ("Unisys III"). The court may, therefore, consider the continuation of coverage language in considering whether there is a "substantial likelihood" that employees would be misled by the evidence proffered by plaintiffs, and the court concludes that it cannot reasonably infer that the documents cited by plaintiffs are sufficient to satisfy that test. Viewed in light of the totality of the plan documents available to the retirees— particularly the continuation of coverage provisions in the SPD, the court cannot reasonably infer that the two documents identified by plaintiffs create a substantial likelihood that a reasonable employee would be misled into believing that their premiums would never increase.

Although the plaintiffs do not raise the issue in their briefing, named plaintiffs Greg Leroy Bittinger ("Bittinger"), Richard F. Kushkowski ("Kushkowski"), John M. Crocker ("Crocker"), and Gene F. Daum ("Daum"), each provided independent and specific factual allegations with respect to misrepresentations about benefit premiums made to them individually by Allegheny Ludlum. (See (Bittinger Decl., ECF No. 144 at 16); (Kushkowski Decl., ECF No. 155 at 69-70); (Crocker Decl., ECF No. 155 at 95-96); (Daum Decl., ECF No. 155 at 99).) Defendants do not appear to dispute that these allegations are sufficient to show an affirmative

misrepresentation with respect to those plaintiffs. (ECF No. 159 at 20 n.14.) Based upon the

detailed allegations in the declarations attached to the second amended complaint, the court

concludes that plaintiffs Bittinger, Kushkowski, Daum, and Crocker sufficiently pleaded the

misrepresentation element of their claims. To the extent, however, that plaintiffs Larry Lewis

("Lewis"), Robert Klugh, Sr. ("Klugh"), Karl Andrew Buday ("Buday") and Kurt A. Szymanski

("Szymanski")[7] make only vague and conclusory statements that they "believed" that their

medical benefits would never change (ECF No. 144 at 74, 79; ECF No. 155 at 59), their claims

are insufficient and, as discussed above, must be dismissed.

### b.    Detrimental Reliance

Defendants argue that Bittinger's, Kushkowski's, Daum's, and Crocker's allegations are

insufficient to show that they relied to their detriment upon the alleged misrepresentations by

Allegheny Ludlum. Plaintiffs point to the new allegations contained in the named plaintiffs'

declarations and the second amended complaint, in which plaintiffs assert, in essence, that if they

had known that their insurance premiums were going to increase so significantly after retirement,

they would have sought medical insurance elsewhere, delayed retirement and continued working

for Allegheny Ludlum, sought employment elsewhere, or changed their budgeting for health care

expenses. (ECF No. 161 at 8 n.5) (citing ECF No. 143 ¶¶ 49-51, 98-101, 106.) Plaintiffs also rely

upon the Supreme Court decision in CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011), for the

proposition that the equitable relief they seek does not require a showing of detrimental reliance.[8]

---

[7] Although Buday and Szymanski's declarations indicate that they spoke with an Allegheny Ludlum benefits administrator, the declarations only indicate that the benefits administrator was silent with respect to whether premiums could increase: "I was never told by the Company benefits administrator that my benefit costs could increase." (Szymanski Decl. (ECF No. 144 at 96).) "Ms. Thomas **never told me** that I would have any increase in the amount of my health insurance premiums . . ." (Buday Decl. (ECF No. 155 at 59).) To the extent that Ms. Thomas' statements were accurate, there was no misrepresentation and Buday and Szymanski do not meet their burden of pleading a misrepresentation.

[8] Because the court concludes that certain of the plaintiffs adequately pleaded detrimental reliance, it will not address this argument.

The Court of Appeals for the Third Circuit recently clarified the meaning of the detrimental reliance prong of the breach of fiduciary duty test: "[D]etrimental reliance is not limited to the retirement decision alone; rather it may encompass decisions to decline other employment opportunities, to forego the opportunity to purchase supplemental health insurance, or other important financial decisions pertaining to retirement." Unisys IV, 579 F.3d at 229; see Shook, 625 F.3d at 73 ("In demonstrating sufficient reliance, the plaintiff must have taken some action as a result of the misrepresentation; the mere expectation of a continued benefit is not enough.").

Defendants challenge plaintiffs' factual allegations in the second amended complaint insofar as they fail to allege a specific action taken by the named plaintiffs in reliance upon the alleged misrepresentations. At this stage, however, the facts alleged in the declarations submitted by plaintiffs Bittinger, Kushkowski, Daum, and Crocker, who sufficiently pleaded misrepresentations were made to them, are sufficient to state a plausible claim for detrimental reliance. Plaintiffs Bittinger, Kushkowski, Daum, and Crocker each made specific factual allegations in their declarations that satisfy the requirements set forth in Shook. Each of those plaintiffs indicate, in essence, that had they known that their premiums would increase as they have, they would have made arrangements for other insurance or would have continued to work at Allegheny Ludlum to continue receiving insurance provided without cost to them.

The remaining plaintiffs made the following specific representations: Bittinger retired on November 1, 2005 and declared that he "relied upon representations made by Allegheny Ludlum's benefits administrators that [his] benefits would remain the same when [he] retired with no additional costs or increases until [he] died." (Bittinger Decl., ECF No. 144 at 16.) Kushkowski retired on January 31, 2006 and declared that he "retired young, and [he] would probably not have done that if [he] had known that [premiums would increase like they have]." (Kushkowski Decl., ECF No. 155 at 69.) Kushkowski averred:

> Just before [he] retired, [he and his wife] met together with Patty Thomas at
> Allegheny Ludlum in her office. . . . The purpose of the meeting was for Patty to
> tell [him] about the benefits [he] would have from the company in retirement.
> Patty told [him], "One thing that's good, Rich, is that you'll never have to pay for
> medical insurance." . . . [He] relied on her to tell [him] about the benefits [he]
> would have in retirement.

(Id. at 69-70.)

> Crocker retired on August 31, 2006 and averred:

> It was [his] understanding based on direct and clear statements from the company
> benefit clerks Patty Thomas and Terry Hegemon that the health insurance benefits
> [he and his wife] had at early retirement would never change, and [they] would
> never pay a premium for the HMO and the free coverage would continue for the
> rest of [their] lives.

(Crocker Decl., ECF No. 155 at 93.) As a result of these representations, Crocker declared that

"[c]ontinuation of [his and his wife's] health insurance for free and without change was a

material consideration in [his] decision to take early retirement." (Id.) Daum retired on October

31, 2006 and declared that his wife's and his health insurance "was a major consideration in [his]

decision to even think about retiring," and that he "relied upon Allegheny Ludlum's benefits

personnel to tell [him] everything [he] needed to know concerning [his] retiree benefits." (Daum

Decl., ECF No. 155 at 99-100.) Daum "attended a large meeting and it was said by the company

that [the attendees] would have a set pension and [they] would be eligible for no cost HMO

keystone blue health insurance [for he and his] wife. This was a big incentive." (Id. at 99.)

The statements from Bittinger, Kushkowski, Daum, and Crocker satisfy a showing of

detrimental reliance. Despite defendants' arguments to the contrary, the statements above

indicate that those plaintiffs did not simply have a "mere expectation of a continued benefit;"

instead, each took an action (or refrained from acting) based upon specific representations by

individuals at Allegheny Ludlum. Shook, 625 F.3d at 74. Kushkowski, Daum, and Crocker

explicitly declared that they based their decision to retire, at least in part, upon the

representations that their health benefits would remain free. To the extent that Bittinger declared

that he relied upon misrepresentations made by the benefits officers at Allegheny Ludlum about

his benefits and chose to forego purchasing additional insurance prior to retiring and chose to

retire rather than continue working, the court may reasonably infer that Bittinger plausibly relied

upon defendants' representations in arriving at their decisions. See Grove, 2013 WL 3049144, at

*9 (court inferred that the plaintiffs adequately pleaded detrimental reliance where plaintiffs

believed they were entitled to lifetime benefits, and "[w]hen those benefits were reduced or

eliminated, Plaintiffs suffered harm."). Because plaintiffs' premiums increased after their

decision to retire and they did not continue working or purchase different insurance, Bittinger,

Kushkowski, Daum, and Crocker pleaded facts sufficient for a plausible showing of detrimental

reliance.[9]

For the purpose of resolving the present motion to dismiss, in which the court must

accept the factual allegations made in the second amended complaint and all attachments thereto

as true, Bittinger, Kushkowski, Daum, and Crocker stated a plausible claim for breach of

fiduciary duty under ERISA. The court will now consider whether, despite the adequacy of the

pleadings, those plaintiffs' claims are nevertheless barred by the applicable statute of limitations.

### 2.    Statute of Limitations

Defendants argue in the alternative that plaintiffs' claims for breach of fiduciary duty are

barred by the applicable statute of limitations. The statute of limitations bars commencing an

action "after the earlier of—(1) six years after (A) the date of the last action which constituted a

part of the breach or violation . . . or, (2) three years after the earliest date on which the plaintiff

had actual knowledge of the breach or violation." 29 U.S.C. § 1113. Section 1113 "creates a

general six year statute of limitations, shortened to three years in cases where the plaintiff has

---

[9] The court notes that some of the named plaintiffs who failed to plead adequately misrepresentation also inadequately pleaded detrimental reliance. Specifically, Buday and Lewis indicated that they "may have continued working for Allegheny Ludlum," (Lewis Decl. (ECF No. 144 at 77)), and would have "possibly continued working for Allegheny Ludlum." (Buday Decl. (ECF No. 155 at 58).) These averments do not rise to the level of taking an action in reliance upon any alleged misrepresentation or omission. Shook, 625 F.3d at 74. These inadequate allegations provide an independent basis for dismissal of Buday's and Lewis' claims.

actual knowledge." Kurz v. Phila. Elec. Co, 96 F.3d 1544, 1551 (3d Cir. 1996). Defendants argue that both the three-year and the six-year statute of limitations under ERISA bar the remaining plaintiffs' claims.

Although the statute of limitations is more properly pleaded as an affirmative defense, the Court of Appeals for the Third Circuit has permitted a defendant to raise the issue in the context of a motion to dismiss pursuant to Rule 12(b)(6), provided the defendant's right to prevail is apparent from the face of the complaint. West Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 105 n.13 (3d Cir. 2010). The court will, therefore, consider defendants' statute of limitations arguments.

### a.    Six-Year Statute of Limitations

The ERISA six-year statute of limitations prohibits filing suit more than six years after "the date of the last action which constituted a part of the breach or violation." 29 U.S.C. § 1113(1). In Unisys III, the Court of Appeals for the Third Circuit found that the six-year statute of limitations begins to run on the date of the last action of detrimental reliance by each plaintiff. Unisys III, 242 F.3d at 505-06. Actual harm is not necessary for the statute to begin to run. Id.

The holding in Unisys III and its progeny are controlling in the present case. In Unisys III, the Court of Appeals for the Third Circuit addressed a situation factually similar to the present case. The plaintiffs in that case, retirees from three corporations, challenged the termination of their post-retirement medical plans on the ground that they were misled when they received assurances from retirement counselors that retirees' "post-retirement medical benefits were 'guaranteed to them for life.'" Id. at 499-500. Following a nonjury trial, the district court concluded, however, that the relevant ERISA plans and SPDs contained a reservation of rights clause that effectively precluded a finding that the post-retirement rights were vested. Id. at 500. The district court determined that the six-year statute of limitations precluded the plaintiffs' suit because they detrimentally relied upon the misrepresentations at the time they retired, more than

six years before bringing suit. Id. at 505. (The termination of the retirees' post-retirement

benefits occurred within the six-year window). Id.

The Court of Appeals for the Third Circuit rejected the retirees' argument that they were

not actually harmed until their benefits were terminated, and that the date of termination should

have been the date of the last action which constituted part of the breach. Id. at 505-06. The

retirees conceded that the termination of their benefits was a non-fiduciary act, but argued

termination was the act that gave rise to their cause of action. The court of appeals held:

> Given the[] elements of a claim for breach of fiduciary duty in this context, it
> necessarily follows that any breach that may have occurred was completed, and a
> claim based thereon accrued, no later than the date upon which the employee
> relied to his detriment on the misrepresentations. . . . Accordingly, it seems clear
> to us that the six-year period for such plaintiffs commenced no later than the
> respective dates of their retirements. . . .
>     We therefore agree with the District Court that the denial of free health
> care coverage was not an element of the plaintiffs' claim. As the District Court
> pointed out, the alleged breach of fiduciary duty here concerned the counsel
> allegedly given or not given, and there is no causal nexus between that counsel
> and the denial of free health care coverage. . . . If Unisys had provided clear and
> accurate counsel, some retirements may not have occurred when they did, but
> there is no reason to believe retirees would now have free coverage. As the
> District Court held, Unisys had a right to terminate free health care coverage, and
> it exercised that right in a non-fiduciary capacity.

Id. at 505-06 (citations omitted).

Likewise in the present case, the dates on which the plans were amended are irrelevant to

the running of the statute of limitations. The relevant misrepresentations in this case—based

upon plaintiffs' declarations—are those made by Allegheny Ludlum benefits administrators upon

which plaintiffs relied to their detriment. Like the district court in Unisys III, this court already

concluded that the continuation of coverage clause in the plan documents did not create a vested

right, so any misrepresentation about coverage being "for life" was in contravention of the

language in the plan documents. At that point, the "last action" giving rise to plaintiffs' breach of

fiduciary duty claim was their detrimental reliance upon those misrepresentations. To the extent

that several plaintiffs explicitly declared that their retirement decision was premised upon the

misrepresentations about their continued receipt of free welfare benefits, Unisys III dictates that the six-year statute of limitations began to run on the "date of the last action which constituted part of the breach;" i.e. the date of plaintiffs' retirement. Id. Plaintiffs' argument that their claim did not arise until they had a "'right to resort to the courts'" is, therefore, without merit.

To the extent plaintiffs argue that their detrimental reliance did not occur at the time of retirement, this argument is equally unavailing. Plaintiffs point to several decisions that allegedly post-dated the date of retirement which constituted the requisite detrimental reliance, including decisions about: (1) delayed retirement; (2) access to increased pensions or increased accessibility to additional health care benefits; (3) arrangements for planning and budgeting for the additional expense of medical insurance premiums; (4) the purchase of additional or other health insurance coverage that would have been more economically feasible for persons on fixed retirement incomes; and (5) leaving defendants' employment for other companies with more substantial medical benefits. (ECF No. 167 at 4.) Apart from being vague and conclusory, these statements all involved decisions that had to be made before retirement, and thus do not meaningfully delay the running of the six-year statute of limitations.

To the extent that plaintiffs contend that the decisions outlined above could have been made after retirement, the decision in Ranke v. Sanofi-Synthelabo Inc., 436 F.3d 197 (3d Cir. 2006), is relevant. The court in Ranke found that the post-retirement decisions[10] discussed in dicta in Unisys III were an "exceptional circumstance," and noted that certain plaintiffs are entitled to a "favorable presumption . . . that, before the running of the statute of limitations, [the defendants] may have engaged in additional acts of breach that were separate from the original

---

[10] The post-retirement decisions discussed in Unisys III are largely the same as those included in plaintiffs' boilerplate declarations, including "declin[ing] other employment opportunities, cho[osing] to forego the opportunity to purchase supplemental health insurance, or ma[king] other important financial decisions for their retirement." Unisys III, 242 F.3d at 507. The court in Unisys III acknowledged that the decision to retire was not the only decision that triggered the running of the statute, but with respect to the plaintiffs who alleged that other post-retirement decisions did so, the court stated: "[i]t is, of course, not clear that the plaintiffs who rely upon these [decisions] will be able to establish their entitlement to relief." Id.

breaches prompting the retirement of other plaintiffs." <u>Ranke</u>, 436 F.3d at 203. The court in

<u>Ranke</u> acknowledged that "<u>Unisys III</u> did not hold that plaintiffs may 'reset the clock' by later

detrimental reliances occurring after their claims first accrued." <u>Id.</u> In so holding, the court of

appeals rejected the concept of 'continuing reliance' by requiring a plaintiff to fall within that

"exceptional circumstance" where defendants continue to breach their fiduciary duty by making

additional post-retirement misrepresentations. <u>Id.</u> No such exceptional circumstance is alleged to

have occurred in the present case; and, as discussed above, all the alleged decisions made by

plaintiffs necessarily occurred prior to their retirement. As such, the final action which created

plaintiffs' claim for breach of fiduciary duty occurred when they detrimentally relied upon the

misrepresentations made by Allegheny Ludlum benefits representatives in deciding to retire.

Having concluded that the six-year statute of limitations began to run at the time the

plaintiffs retired, it is necessary to determine which plaintiffs' claims are barred by the six-year

statute. The present suit was filed on November 18, 2011. Plaintiffs must have retired after

November 18, 2005 in order for their claims to fall within the applicable time period. Of the four

named plaintiffs whose claims were not dismissed for insufficient pleading (Bittinger,

Kushkowski, Daum, and Crocker), Bittinger retired on November 1, 2005, and his claim became

time-barred on November 1, 2011. Of those plaintiffs whose claims were already dismissed, the

claims of plaintiffs Szymanski and Klugh are also barred by the six-year statute of limitations.

Three remaining plaintiffs—Kushkowski, Daum, and Crocker—all retired after the cutoff date,

and therefore brought suit within the six-year window. Defendants make other procedural

arguments with respect to why the three remaining plaintiffs' claims should be time-barred

despite their claims accruing within the six-year limitations period. The court will not address

those arguments because ERISA's three-year statute of limitations bars those three remaining

claims.

b.   <strong>Three-Year Statute of Limitations</strong>

The court previously recognized that the three-year statute of limitations for ERISA claims is cautiously applied. Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 787 (3d Cir. 2001) (holding that the actual knowledge requirement triggering ERISA's shorter, three-year statute of limitations is interpreted "'stringently'" and sets a "'high standard for barring claims'" (quoting Gluck v. Unisys Corp., 960 F.3d 1168, 1176 (3d Cir. 1992))); see Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co., 311 F.3d 581, 587 (3d Cir. 2002) ("[I]n order to be barred by the three year statute of limitations the claimant [must] know[] the facts on which he relies to establish a breach of fiduciary duty [and] it must also be established that the claimant knows that he has a cause of action under ERISA, which includes "actual knowledge" of harm inflicted or harmful consequences."); International Union of Elec., Elec. Salaried, Mach. & Furniture Workers v. Murata Erie N. Am., 980 F.2d 889, 900 (3d Cir. 1992) ("Gluck . . . requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA.").  But see Kurz, 96 F.3d at 1551-52 (holding, without addressing the Murata ruling, that the three-year statute of limitations is triggered merely by knowledge of the material facts necessary to understand that some claim exists).[11]   As a defense, defendants have the burden of proof, and defendants must meet their burden by relying on the face of the second amended complaint.  See Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (holding that a limitations defense may be raised in a Rule 12(b)(6) motion, but only if the defense is "apparent on the face of the complaint"). In order to satisfy the

---

[11] The Court of Appeals for the Third Circuit has minimized the import of the Kurz holding, without explicitly ruling that it is inconsistent with Murata. Roush and Montrose reaffirmed the requirement that the plaintiff must have knowledge that he has a claim under ERISA, as opposed to mere knowledge of the material elements of the claim. See, e.g., Roush, 311 F.3d at 586-87 (discussing the Kurz holding and noting that the Montrose holding was "of greater significance").  To the extent that the less stringent requirement in Kurz is consistent with other opinions from the Court of Appeals for the Third Circuit, the court finds that it is against the weight of authority, and the court would apply the stricter requirements more recently enunciated.  To the extent the opinion is inconsistent with the other opinions from the court of appeals, this court would be bound to follow the earlier enunciation of the rule in Gluck and Murata, which requires knowledge of the material elements *and* knowledge of a claim.  See Pardini v. Allegheny Intermediate Unit, 524 F.3d 419, 426 (3d Cir. 2008) ("This Circuit has long held that if its cases conflict, the earlier is the controlling authority and the latter is ineffective as precedents.").

Gluck test and apply the three-year statute of limitations, defendants bear the burden of showing:

(1) plaintiffs actually knew about the events that constituted the breach of the fiduciary duty; and

(2) those events supported a claim for breach of a fiduciary duty pursuant to ERISA. Murata, 980

F.2d at 900.

Defendants attempt to satisfy the stringent actual knowledge requirement set forth in

Gluck and its progeny by pointing to the May 2004 "Summary Proposed Agreement between

Allegheny Ludlum and the United Steelworkers of America" (the "2004 Summary"). (ECF No.

143-20.) The 2004 Summary (which is attached to the second amended complaint) provides in

relevant part:

> Beginning January 1, 2008 Allegheny Ludlum retirees participating in the PHMB
> will be required to make the following monthly contributions for Base coverage
> and Optional Major Medical coverage.
> - The contribution required is 50% of Optional Major Medical Coverage;
> - Amounts in excess (Excess Contribution) of the Company's "per member"
>   cost of the Base Major Medical PHMB for Plan Year 2007.

(ECF No. 143-20.) Defendants rely upon the July 1, 2007 PHMB, (Stuligross Dep. Ex. 25),

which incorporates the proposed caps on Allegheny Ludlum's premium contributions, to support

their argument that plaintiffs had actual knowledge of the alleged breach of Allegheny Ludlum's

fiduciary duty, at the latest, in July 2007. (ECF No. 160-4 at 173, 190.) Defendants argue that the

2004 Summary and the 2007 PHMB confirmed that retirees' benefits would no longer be "free

for life" as of January 1, 2008, thus contradicting Allegheny Ludlum's purported assurances

otherwise. At the very least, defendants maintain that plaintiffs suffered actual injury on January

1, 2008, at which time they began having to pay premiums for their benefits, further

contravening Allegheny Ludlum's assurances that benefits would be "free for life."

Defendants can, at most, show that the 2004 Summary and the 2007 PHMB should have

given notice of the changes coming on January 1, 2008—a showing that is insufficient to satisfy

the Gluck actual knowledge standard. Specifically, defendants point to no allegation in the

complaint suggesting that plaintiffs had sufficient knowledge of the provisions in those documents—i.e. that they read the provisions and actually knew that if they came into effect, it would constitute a breach of fiduciary duty under ERISA. The 2004 Summary suggested that Allegheny Ludlum's contributions to premiums would be capped, not that plaintiffs "would be required to pay increased premiums as retirees for all types of health coverage" as of January 1, 2008. The 2007 PHMB also requires readers to cross-reference to a separate section in order to find information about the increased premiums, which makes it difficult for the court to infer— as defendants would like—that plaintiffs read and understood the implications of those documents. At the time of the 2004 Summary and the 2007 PHMB, plaintiffs did not necessarily have actual knowledge that they would be required to begin paying premiums. Given that the three-year statute of limitations is to be stringently applied, the court cannot conclude that it began to run in May 2004 or July 2007.

Defendants argue in the alternative, however, that plaintiffs had actual knowledge of the breach of fiduciary duty on January 1, 2008, when they began paying the increased premiums despite Allegheny Ludlum's alleged misrepresentations to the contrary. Defendants conclude that since plaintiffs suffered "actual harm" in the form of increased premiums, they had actual knowledge beginning January 1, 2008. If defendants are correct, then plaintiffs' claims would be time barred because their claim accrued on January 1, 2008; yet suit was not filed until November 18, 2011, more than three years and ten months later.

As an initial matter, Kushkowski, Crocker, and Daum, the only named plaintiffs with cognizable breach of fiduciary duty claims, each explicitly deny having actual knowledge of an ERISA violation in January 2008, adding that they "did not even know what ERISA was" at that time. (ECF No. 155 at 70; Id. at 96; Id. at 101.) The second amended complaint alleges that

letters sent on October 24, 2007[12] (which defendants also cite) "did not give Plaintiffs the 'actual knowledge' that a claim existed or that an ERISA provision had been violated." These conclusory allegations, however, are insufficient for the court to infer reasonably that plaintiffs were not aware of actual harm in the form of increased payments suffered beginning on January 1, 2008. The Court of Appeals for the Third Circuit recognized in Gluck that knowledge of the actual harm or harmful consequences of a transaction is sufficient to satisfy the actual knowledge requirement for purposes of the three-year statute of limitations under ERISA. Gluck, 960 F.2d at 1177-78. There can be little doubt that, beginning on January 1, 2008, Kushkowski, Daum, and Crocker (who were all retired at that time) began suffering actual harm in the form of increased payments.[13] At that time, the three-year statute of limitations began to run, and barred their claims as of January 1, 2011. To the extent that plaintiffs acquired actual knowledge of the alleged breach of fiduciary duty with respect to the January 1, 2008 premium increases and only filed suit on November 18, 2011, the claims of Kushkowski, Daum, and Crocker are barred by the three-year statute of limitations.[14]

### D.    Count Four

Since the court concluded that all the named plaintiffs' substantive claims lack merit or are time barred, count four (which is premised upon a finding of vested benefits) must also be dismissed because the court no longer has subject-matter jurisdiction over plaintiffs' declaratory judgment claims. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) ("'[T]he operation of the Declaratory Judgment Act is procedural only.'" (quoting Aetna Life Ins. Co. of

---

[12] The court was not provided a copy of this purported letter. To the extent that defendants rely upon it as evidence that plaintiffs had actual knowledge of the breach, the court cannot review the letter to determine whether it provided such knowledge.

[13] To the extent plaintiffs attempt to argue that the three-year statute of limitations began to run again with the January 1, 2012 premium increase, this argument is without merit. Plaintiffs had actual knowledge of any purported misrepresentation at the time the premiums increased on January 1, 2008 and they began to pay; no reasonable jury could conclude otherwise.

[14] It is also worth noting that the claims of Szymanski, Klugh, and Bittinger are also barred by the three-year statute of limitations, since the actual knowledge acquired on January 1, 2008 would have caused their claims to accrue at that time.

Hartford, Conn. V. Haworth, 300 U.S. 227, 240 (1937)); Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1335 (Fed. Cir. 2008) (The Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, "is not an independent basis for establishing subject-matter jurisdiction.").

### E.    Futility of Amendment

Plaintiffs had three opportunities to set forth plausible claims for breach of contract, and breach of fiduciary duty. A court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "[I]f the court determines that plaintiff has had multiple opportunities to state a claim but has failed to do so, leave to amend may be denied." 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, RICHARD L. MARCUS, AND ADAM N. STEINMAN, FEDERAL PRACTICE & PROCEDURE § 1487 (3d ed. 2010); see e.g. Denny v. Barber, 576 F.2d 465, 469-71 (2d Cir. 1978). Based upon the discussion set forth above, the court concludes that further attempts to amend plaintiffs' complaint will be futile because the language of the continuation of coverage provision is unambiguous, and the ERISA statute of limitations bars plaintiffs' claims of breach of fiduciary duty. The dismissal will, therefore, be with prejudice. The court appreciates that the consequences of decisions by Allegheny Ludlum and the USW may place plaintiffs in financial straits due to the increases in premiums retirees must pay. The court, however, lacks the requisite authority to change their decisions. Under the applicable caselaw, there is no breach of contract and any fiduciary breach is barred by the applicable statute of limitations. An appropriate order follows.

### ORDER

AND NOW, this 2nd day of August, 2013, it is HEREBY ORDERED that the motion to dismiss (ECF No. 158) is GRANTED.

IT IS FURTHER ORDERED that, upon consideration of plaintiffs' three attempts to amend the complaint to no avail, further amendment would be futile and the second amended complaint is dismissed with prejudice. The clerk shall mark the case CLOSED.


By the court,


 /s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge